UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VIESTE, LLC, ET AL.,                   No. C-09-04024 JSW (DMR)

        Plaintiffs,                      **ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL**

   v.

HILL REDWOOD DEVELOPMENT, ET AL.,

        Defendants.
_____/

       Before the Court is Plaintiffs' Renewed Motion to Compel Documents Improperly Withheld as Privileged. *See* Docket No. 140. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel at the November 17, 2010 hearing, the Court hereby GRANTS Plaintiffs' Renewed Motion to Compel Documents Improperly Withheld as Privileged.

**I. Factual and Procedural Background**

       Plaintiffs Vieste, LLC, et al. ("Vieste") filed suit against Defendants Hill Redwood Development, Ltd., et al. ("Hill Redwood Development"), alleging, *inter alia*, claims of breach of contract and fraud arising out of the parties' October 2008 agreement to form a joint venture, HRV Development, LLC to pursue real estate development opportunities in Metropolis, Illinois and Xalapa, Mexico. In December 2008, the parties jointly retained the law firm Williams Mullen in

connection with the formation of HRV Development, LLC. Docket No. 140, Attachment 1, Declaration of Patricia L. Peden ("Peden Decl."), Ex. 3. The work performed by Williams Mullen included reviewing the details of the projects, advising the parties concerning negotiations with the municipalities, and advising the parties concerning the formation of the joint venture. There is no dispute that the communications the parties had with Williams Mullen during the course of their attorney-client relationship are relevant to the claims at issue.

In discovery, both parties demanded the production of all communications with Williams Mullen. After serving responses to Plaintiffs' document requests, Defendants served their first privilege log detailing documents being withheld from production to Plaintiffs in May 2010, and served an amended privilege log in June 2010. Ex. 2 to Peden Decl. Despite having demanded Plaintiffs' communications with Williams Mullen, Defendants asserted the attorney-client privilege and work product protection for their own communications with the law firm, which were listed on their privilege log. Defendants also listed a number of communications to and from employees of a third party, ZAC Management Group, as well as communications with an individual named Bob Hartman ("third party communications"), on their log, and asserted the attorney-client privilege and work product protection for such communications. The log entries reflected the fact that many of the third party communications were shared with Williams Mullen. Ex. 2 to Peden Decl. The parties then began lengthy meet and confer efforts regarding the log and the documents being withheld by Defendants on the grounds of privilege and work product protection.

In August 2010, Plaintiffs issued a third party subpoena to Williams Mullen for all of its communications with Defendants, as well as documents related to the firm's work on the projects at issue. Defendants did not object to the subpoena. Plaintiffs ultimately withdrew the subpoena and Williams Mullen voluntarily produced all such documents in its possession. However, Williams Mullen was unable to retrieve and produce all communications between the parties and one of the attorneys working on the matter, Trey Blalock, because Mr. Blalock is no longer employed by the firm and his email was not saved in the firm's archives. Plaintiffs continued to meet and confer with Defendants regarding the documents being withheld on the grounds of privilege, as well as what

1 Plaintiffs viewed as deficiencies in Defendants' log, but the parties were unable to resolve their
2 disputes.

3 On September 27, 2010, Defendants served an amended privilege log. Ex. 1 to Peden Decl.
4 In their amended log, Defendants continued to assert the attorney-client privilege and work product
5 protection for the Williams Mullen communications and the third party communications. On
6 October 6, 2010, Plaintiffs filed a Motion to Compel Privilege Log Documents with this Court. *See*
7 Docket No. 138. Shortly thereafter, the Court vacated the hearing date on Plaintiffs' Motion to
8 Compel and ordered the parties to meet and confer in person in a courtroom to try to reach
9 agreement regarding the outstanding disputes. *See* Docket No. 139. The parties did so on October
10 15, 2010, and reached agreement on Defendants' claims of work product protection for the
11 documents listed on Defendants' privilege log.[1] Peden Decl. ¶ 46(C). However, the parties were
12 unable to resolve their disputes regarding Defendants' assertions of attorney-client privilege for the
13 Williams Mullen communications and the third party communications. In addition, during the
14 October 15, 2010 meet and confer session, Defendants informed Plaintiffs that there are additional
15 documents that Defendants are withholding that were *not* listed on their September 27, 2010
16 privilege log (and had not been listed on any privilege log previously provided by Defendants).
17 Peden Decl. ¶ 46(D).

18 This renewed motion followed. On November 9, 2010, just over one week before the
19 hearing on this matter, Defendants produced an updated privilege log, containing entries for the
20 documents that they have been withholding from Plaintiffs, and that had not been listed on a
21 privilege log to date. Docket No. 153, Attachment 1, Declaration of Patricia L. Peden in Support of
22 Plaintiffs' Reply to Defendants' Opposition ("Second Peden Decl."), Ex. 16.

23 In this motion, Plaintiffs seek to compel the production of three categories of documents: 1)
24 communications with Williams Mullen made during the course of the parties' joint representation by
25 the law firm, withheld by Defendants on the basis of attorney-client privilege; 2) communications
26 with third parties, withheld by Defendants on the basis of attorney-client privilege; and 3)

---

[1] Defendants withdrew their claims of work product protection for the disputed documents, and the work product doctrine is not at issue in this motion.

3

1  documents withheld by Defendants but not disclosed on any privilege log until November 9, 2010,
2  for which Plaintiffs claim any privilege has been waived.

## II. Discussion

### A. Applicable Law

In this diversity action, California law governs resolution of issues arising out of Defendants' invocation of the attorney-client privilege. Fed. R. Evid. 501. Under California law, the attorney-client privilege is governed by statute. Cal. Evid. Code § 911 *et seq*. It is the burden of the party claiming a privilege to show that the evidence it seeks to suppress falls within the terms of an applicable statute. *Great American Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1090 (N.D. Cal. 2009); *HLC Properties, Ltd. v. Super. Ct. of Los Angeles County*, 35 Cal. 4th 54, 59 (2005). Because evidentiary privileges prevent the admission of relevant and otherwise admissible evidence, they should be narrowly construed. *People v. Sinohui*, 28 Cal. 4th 205, 212 (2002).

### B. Attorney-Client Privilege

California recognizes an attorney-client privilege, which applies to confidential communications between client and lawyer during the course of the attorney-client relationship. *See* Cal. Evid. Code § 952. However, California Evidence Code section 962 provides an exception to the privilege; specifically, the section provides that "[w]here two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege under this article as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest)." It is this exception that squarely addresses the present dispute between the parties regarding communications with Williams Mullen.

Defendants do not dispute that Vieste and Hill Redwood Development were Williams Mullen's joint clients, nor that Williams Mullen was retained by the parties in connection with the formation of HRV Development, LLC. Docket No. 148 at 3. However, Defendants argue that section 962 does not apply here, primarily because Defendants allege that they relied upon Williams Mullen to provide legal advice that was outside the scope of the fee agreement between the parties

4

and Williams Mullen, and that such advice was not within the "common interest" of the jointly-represented parties as required by California Evidence Code section 962. Docket No. 148 at 5. Defendants argue that the language of the fee agreement between Vieste, Hill Redwood Development, and Williams Mullen controls the scope of the exception set forth in section 962. Docket No. 148 at 3, 9. Defendants point to the language in the cover letter to the December 2008 retainer agreement signed by the parties, and claim that the joint representation was limited to the "structuring of companies to provide strategic, developmental management, consulting and advisory services related to capital development programs for governmental and quasi-governmental entities." Docket No. 148 at 9; Ex. 3 to Peden Decl. Therefore, Defendants argue, Williams Mullen's provision of tax advice to Hill Redwood Development in connection with the Metropolis and Xalapa projects, as well as advice regarding the Memorandums of Understanding related to the two projects, was outside the scope of the joint fee agreement, thus rendering communications with counsel regarding such subjects privileged. Docket No. 148 at 5, 9.

Defendants' argument fails for several reasons. First, the language in the cover letter is quite broad, and on its face is not limited to the task of "structuring companies." The cover letter generally describes the nature of the work to be performed in connection with the formation of HRV Development, LLC, but in no way suggests that the firm's work was expressly limited to the work described in the letter. Ex. 3 to Peden Decl. The word "limited" does not appear anywhere in the letter or in the four-page "Standard Terms of Engagement" that follow. *Id*. Billing summaries speak to the true breadth of the actual work performed by Williams Mullen. Exs. 3-5 to Second Peden Decl. That work far exceeded the task of "structuring companies" and included legal advice about the actual functioning of the joint venture, including review of operating agreements and MOUs.

Second, Defendants introduced no evidence to support their contention that they had separately retained Williams Mullen to work on matters related to the Metropolis and Xalapa projects outside the scope of the firm's joint representation of the parties.[2] They simply point to the

---

[2] The Court expresses no opinion on the effect that any evidence of a separate agreement would have on its analysis of California Evidence Code section 962, and notes the potential conflict of interest concerns posed by the existence of such an agreement. The more prudent course would have been to discuss the boundaries of the joint representation vis-à-vis any separate representation provided by Williams Mullen to

5

1  fact that Plaintiffs retained separate legal counsel to advise them on matters related to the Metropolis
2  and Xalapa projects to argue that Plaintiffs "did not consider themselves to be joint clients of
3  Williams Mullen with respect to anything other than the formation of HRV Development LLC" and
4  the related entities.  Docket No. 148 at 9.  Defendants cite *Bank of the West v. Valley National Bank*
5  *of Arizona*, 132 F.R.D. 250, 252-253 (N.D. Cal. 1990), to support their argument that section 962
6  does not apply where one of the joint clients retained separate counsel to guard its interests.
7  However, in *Bank of the West*, the party asserting that section 962 applied did not have an express
8  attorney-client relationship with the firm in question, but instead argued that such a relationship
9  could be implied from allegations made by the plaintiff in its complaint. 132 F.R.D. at 251.  The
10 court found that the parties were not joint clients of the same attorney, and therefore section 962 did
11 not apply.  *Id.* at 252-253.  Here, there is no question that Vieste was a joint client of Williams
12 Mullen, with Hill Redwood Development.  Plaintiffs' status is proven by a written agreement.  Ex. 3
13 to Peden Decl.  Plaintiffs' relationship with any attorney other than Williams Mullen is irrelevant.

14      More importantly, the joint-client exception contained in section 962 contains no limitation
15 to communications within the scope of the fee agreement.  Section 962 does not even require a fee
16 agreement.  *See* Cal. Evid. Code § 962 ("Where two or more clients have retained *or consulted* a
17 lawyer…") (emphasis added).  Defendants' attempt to carve out an exception within the exception
18 notwithstanding, any limitation in section 962 is found in the term "a common interest."  *See*
19 *Glacier Gen. Assurance Co. v. Super. Ct.*, 95 Cal. App. 3d 836, 840 (1979) ("The limiting phrase is
20 'a matter of common interest.'").  To read any other limitation into the meaning of section 962
21 would defeat the purpose of the joint client exception to the privilege.  Whereas the purpose of the
22 joint client privilege is to encourage "the fullest possible communication" between joint clients, and
23 between joint clients and their jointly-retained lawyer,

> "[t]he principal purposes of the joint client *exception* to the privilege,
> on the other hand, are (1) to prevent unjustifiable inequality in access to
> information necessary to resolve fairly disputes that arise between parties
> who were in the past joint clients- when the disputes relate to matters that

---

Defendants, and obtain any necessary express conflict waivers from Vieste.  By failing to anticipate potential future conflicts and address them on the front end, Defendants opened themselves up to the consequences they now face.

United States District Court  
For the Northern District of California

> were involved in the joint representation and (2) to discourage abuses of fiduciary obligations and to encourage parties to honor any legal duties they had to share information related to common interests."

*Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.*, 150 F.R.D. 648, 653 (N.D. Cal. 1993) (emphasis in original); *see also Wortham & Van Liew v. Super. Ct.*, 188 Cal. App. 3d 927, 931 (1987) ("although the attorney-client privilege is important, even more important is that relationship which the privilege is intended to protect, namely the relationship of an attorney to his client and his fiduciary obligations to his client."). Williams Mullen owes a duty of loyalty to both clients in the joint representation, and documents regarding the representation cannot be kept by one joint client from the other.

Here, Defendants are in control of the disputed communications with Williams Mullen only by happenstance; Williams Mullen could not turn them over to Plaintiffs because Mr. Blalock's emails were not archived by the firm after he left the firm. To permit Defendants to shield these communications with the parties' shared attorneys from Plaintiffs would clearly be an "unjustifiable inequality in access to information" necessary to resolve the disputes that are at the heart of this litigation. In joint representation cases like this one, *all* communications with the parties' shared attorneys are discoverable. *Wortham*, 188 Cal. App. 3d at 933 (1987); *Glacier Gen.* 95 Cal. App. 3d at 840. The parties jointly retained Williams Mullen upon a matter of common interest; namely, the Metropolis and Xalapa projects. All communications with the firm related to those projects clearly fall within section 962's exception to the attorney-client privilege.

Defendants cite a number of other cases which do not support their argument that section 962 does not apply in this situation. First, Defendants argue that both joint clients must be present for the communications for section 962 to apply, citing *Glade v. Superior Court*, 76 Cal. App. 3d 738, 747 (1978) ("the exception to the privilege [contained in section 962] is not invoked as to communications made in confidence to the attorney by one of the joint clients at a time when the other client was not present"). However, the statement in *Glade* has been repeatedly distinguished as dicta and not followed by California courts. In *Wortham*, the party asserting privilege cited *Glade* for the same proposition as Defendants do now. 188 Cal. App. 3d at 933. The court dismissed the argument, finding the statement in *Glade* to be "dictum" and such a holding "nonsense," because if

7

the joint client were present, it "would have little need to compel revelation of the communication and any privilege would have been waived." *Id.*; *see also Glacier Gen.*, 95 Cal. App. 3d at 841 (the language of section 962 "seem[s] explicitly and unambiguously to include *all* communications-bilateral as well as trilateral. If the Legislature had meant otherwise it could have easily said so.") (emphasis in original). We find the reasoning of the court in *Wortham* persuasive and decline to follow the dicta in *Glade*.

Defendants also cite *Roush v. Seagate Tech.*, 150 Cal. App. 4th 210, 226 (2007), which in turn cites *American Mut. Liab. Ins. Co. v. Super. Ct.*, 38 Cal. App. 3d 579, 592 (1974), but these cases do nothing to further Defendants' argument. In *Roush*, two former employees retained the same counsel at different times to bring separate cases against their employer. The court found that the employees were not "joint clients" because they had not retained the attorney to represent them in a single action, but instead sought representation for "distinctly different claims." 150 Cal. App. 4th at 225. Here, it is undisputed that the parties were joint clients of Williams Mullen and that they retained the law firm to represent them in connection with the Metropolis and Xalapa projects, a matter of common interest. Regarding *American Mutual*, the court did not even address section 962; its holding was limited to disclosure to third parties. As the court in *Glacier General* noted, *American Mutual* held that the insured and insurer were both clients of the attorney, and each enjoyed the protection of the attorney-client privilege; "as against third parties, neither could waive the privilege for the other." *Glacier Gen.*, 95 Cal. App. 3d at 840. Here, the assertion of the privilege arises in the context of litigation between the clients and does not involve third parties, "the specific situation for which Evidence Code section 962 was designed." *Id.*

Finally, *Sky Valley Ltd.* similarly does not support Defendants' argument. That case set forth factors to consider when examining whether parties are joint clients of a law firm, in the absence of an express or implied contract with the firm. 150 F.R.D. at 652-653. Again, it is undisputed that the parties here were joint clients of Williams Mullen. Accordingly, the Court orders Defendants to produce to Plaintiffs all communications with Williams Mullen in any way relating to Vieste, the joint venture, or the Metropolis and Xalapa projects, that have not already been produced to Plaintiffs.

**C. Third Party Communications**

In their opposition to this motion, Defendants explain that ZAC Management Group ("ZAC") provides "back office services," including accounting and bookkeeping, to Redwood Capital Advisors, LLC ("RCA"), an individual defendant. Defendants claim that it was necessary to copy ZAC employees Steve Freiberg, Dino Kelly-Cataldi, and Elisa Tractman on communications with Williams Mullen because Hill Redwood Development anticipated that ZAC would provide back office services for the Metropolis and Xalapa projects. Docket No. 148 at 6-7. Further, Defendants identify Bob Hartman as a "trusted business advisor" of Steven Fishman, the chairman of RCA. Notwithstanding Defendants' assertion that ZAC is an "agent" of defendant RCA for purposes of extending the privilege to shield their communications, the majority of what have been identified as "third party communications" listed on Defendants' privilege log appear to have been with, or shared with, Trey Blalock, a Williams Mullen attorney. As discussed, *all* communications with the parties' shared attorneys are discoverable. Cal. Evid. Code § 962; *Wortham*, 188 Cal. App. 3d at 933; *Glacier Gen.*, 95 Cal. App. 3d at 840. Therefore, communications between employees of ZAC, Bob Hartman, and Mr. Blalock, and communications between ZAC employees and Mr. Hartman that were shared with Mr. Blalock (or any Williams Mullen attorney) and that were regarding the Metropolis and Xalapa projects must be produced to Plaintiffs.

Regarding the entries on the privilege log reflecting third party communications that were *not* shared with Williams Mullen, Defendants maintain that the attorney-client privilege also protects these communications from discovery by Plaintiffs. Yet the privilege only applies to confidential communications between client and lawyer during the course of the attorney-client relationship. A "'confidential communication between client and lawyer' means information transmitted between *a client and his or her lawyer* in the course of that relationship and in confidence… and includes *a legal opinion formed and the advice given by the lawyer* in the course of that relationship." Cal. Evid. Code § 952 (emphasis added). However, only one of the four individuals at issue, Elisa Tractman, is an attorney. Docket No. 148 at 6. Communications between ZAC employees and Mr. Hartman in which no attorney participated thus cannot be attorney-client privileged communications.

9

With respect to communications with Ms. Tractman, Defendants have not met their burden to explain why such communications are properly withheld as privileged. Ms. Tractman is an attorney who was employed by a subsidiary of ZAC and served as ZAC's general counsel at the time of the communications at issue. Docket No. 148 at 6. Defendants describe her role as "drafting documents and providing legal advice on an as-needed basis, as well as coordinating with outside counsel" for ZAC and two individual defendants. Docket No. 148 at 6. However, Defendants have failed to make any showing that her communications contained "a legal opinion formed" or included legal advice, as required by California Evidence Code section 952. Instead, the communications listed on Defendants' privilege log in which Ms. Tractman was a participant appear to relate to routine business matters, such as communications "regarding status" of projects and "regarding insurance" for projects. There is no attorney-client privilege to the extent that an attorney is acting in a nonlawyer capacity- e.g., transacting business that could have been transacted by a non-attorney. *See Montebello Rose Co. v. Agricultural Lab. Rel. Bd.*, 119 Cal. App. 3d 1, 32 (1981) (employer's communications with attorney acting in capacity of labor negotiator not privileged). There is nothing in the descriptions on the log, nor in Defendants' opposition to this motion, to suggest Ms. Tractman's communications were related to legal advice. In fact, any discussion of the legal advice contained in the communications by Defendants in opposing this motion is limited to the legal advice provided by *Williams Mullen*, not Elisa Tractman. Docket No. 148 at 12-13. It is Defendants' burden to address each document listed on their privilege log and explain why that document is properly withheld as privileged. Defendants have failed to do so.

Defendants cite to *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal. App. 4th 110, 122 (1997) for the proposition that in close cases, where the legal work and non-legal work are "inextricably intertwined," the privilege should be sustained. Docket No. 148 at 12. In *Wellpoint*, the court examined whether the attorney-client privilege should apply to documents related to an attorney's investigation into an employee's claims of discrimination on behalf of the attorney's client, the employer. The court acknowledged that communications made by an attorney performing a dual role of providing legal advice as well as advising on business affairs pose a challenge in determining whether the communication was of a legal nature and thus privileged. *Wellpoint*, 59

1    Cal. App. 4th at 122. Yet the court did not hold that those issues should simply be resolved in favor
2    of the privilege, as Defendants suggest. Instead, the court held that such a determination should be
3    made based on the subject matter of each document. *Id.* at 123. Unlike the documents at issue in
4    *Wellpoint*, this is not a close case. Defendants have made no showing at all that Ms. Tractman's
5    communications involved legal advice or opinion, and thus cannot sustain their claims of privilege
6    for her communications. Therefore, Defendants must produce to Plaintiffs all withheld
7    communications involving ZAC employees and/or Mr. Hartman.

### D. Documents Not Disclosed On A Privilege Log Until November 2010

On November 9, 2010, Defendants served a supplemental privilege log on Plaintiffs. This new privilege log appears to include the same 76 entries as were on the September privilege log, along with 62 new entries, and asserts various privileges for the entries, including attorney-client privilege and work product protection. Many entries are also identified as "confidential/ proprietary/ trade secret." Ex. 16 to Second Peden Decl. Plaintiffs have identified 29 of the new entries on the log that they would have addressed in the present motion, had they been identified and disclosed to Plaintiffs sooner. Second Peden Decl. ¶ 17. Plaintiffs argue that Defendants' failure to list the new entries on any privilege log until November, *six months* after the production of Defendants' first log, should result in the waiver of the asserted privileges, pursuant to *Burlington Northern & Santa Fe Railway Co. v. United States Dist. Ct. of Montana*, 408 F.3d 1142 (9th Cir. 2005), and to this Court's standing order regarding discovery.[3] Docket No. 140 at 14-15.

Federal Rule of Civil Procedure 26(b)(5) provides that a party withholding information under a claim that it is privileged or subject to protection as trial preparation material must: (i) expressly

---

[3] This Court's standing order regarding discovery provides that when a party "withholds information that is responsive to a discovery request by claiming that it is privileged or otherwise protected from discovery, that party shall promptly prepare and provide a privilege log that is sufficiently detailed and informative to justify the privilege. *See* Fed.R.Civ.P. 26(b)(5)." The information required to be specified separately for each document in the log includes: "A. The title and description of the document, including number of pages or Bates-number range; B. The subject matter addressed in the document; C. The identity and position of its author(s); D. The identity and position of all addressees and recipients; E. The date the document was prepared and, if different, the date(s) on which it was sent to or shared with persons other than its author(s); and F. The specific basis for the claim that the document is privileged or protected." The order further specifies that any party's "[f]ailure to furnish this information *promptly* may be deemed *a waiver of the privilege or protection*." (emphasis added).

11

make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim. *See* Fed.R.Civ.Proc. 26(b)(5). A privilege should be asserted within thirty days of a request for production. Fed. R. Civ. P. 34(b)(2)(A). However, the Ninth Circuit has rejected a *per se* rule that the failure to produce a log within 30 days results in waiver of the privilege. *Burlington*, 408 F.3d at 1149. Instead, the Court held that a district court should engage in the following "holistic reasonableness" analysis:

> "...[U]sing the 30-day period as a default guideline, a district court should make a case-by-case determination, taking into account the following factors: the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy... or unusually hard." *Id.* at 1149.

The Ninth Circuit further explained that the intent of the "holistic reasonableness" analysis is "to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process." *Id.*

Applying this analysis, the *Burlington* court upheld the district court's finding of a waiver, based on the following factors: the privilege log was produced five months after the time limit for production under Rule 34; the log was not sufficient in that, *inter alia*, it did not specify the withheld documents which correlated with certain discovery requests; no "mitigating circumstances" were present; and the party withholding documents was a "sophisticated corporate litigant" that had previously produced many of the documents at issue in a prior lawsuit so that it was "hard to justify" a timely response was not possible or would have been unduly burdensome. *Id.* at 1149-1150.

Here, Defendants argue that there should be no waiver because it was only on September 28, 2010 that Plaintiffs *asked* "whether there were additional documents that were not listed" on Defendants' privilege log. Docket No. 148 at 13. Defendants misapprehend the nature of their duty. Rule 26 and this Court's standing order impose *an affirmative obligation* on the parties to promptly disclose the information that Plaintiffs have been seeking for months. They are not mere guidelines,

to be followed only upon request by an opposing party. Moreover, Defendants are well aware of the obligations imposed by this Court's standing order, as evidenced by prior motions filed by Defendants before this Court seeking to compel Plaintiffs to comply with their own obligations to promptly provide privilege logs. *See* Docket Nos. 64 and 74. Notwithstanding the evidence that Plaintiffs had been meeting and conferring with Defendants regarding what Plaintiffs viewed as deficiencies in Defendants' privilege log since at least July 2010, Defendants took four or more months to disclose the documents they are withholding from Plaintiffs. Regarding the magnitude of the document production, there are only 62 new entries on the log, which is not a particularly unwieldy amount. Moreover, Defendants have presented no evidence of mitigating circumstances.

On this record, it would be well within this Court's discretion to order a waiver of all documents that appear for the first time on Defendants November 9, 2010 privilege log. However, in light of the fact that some of the documents appear to discuss this litigation, and thus their production may be particularly prejudicial to Defendants' position, the Court orders the following: all new documents that fall into the same categories discussed above shall be produced to Plaintiffs for the reasons stated above. As to new documents referencing this litigation, the Court shall give Defendants one additional opportunity to argue why waiver should not apply, and also why such documents are entitled to be withheld as privileged.

### III. Conclusion

For the foregoing reasons, Plaintiffs' motion is GRANTED as follows:

Defendants are ordered to produce the following documents to Plaintiffs **no later than November 23, 2010:**

- Documents reflecting communications with or shared with Williams Mullen, entries 2-5, 35-37, 46, 48-49, 51-52, 55-59, 62-67, 70-73 on Defendants' November 9, 2010 privilege log;
- Documents reflecting third party communications, entries 33, 34, 47, 74, and 75 on Defendants' November 9, 2010 privilege log; and
- Documents disclosed for the first time on Defendants' November 9, 2010 privilege log, entries 87-90 and 92-94.

For the documents disclosed on Defendants's November 9, 2010 privilege log where it is unclear from Defendants' descriptions as to whether the documents are relevant to this litigation (entries 45, 50, 53, 54, 60, 61, 68, 69, 85, 86, 91, 95, and 103), Defendants are ordered to examine the documents to determine if they pertain in any way to the subject of the parties' joint representation, i.e. Vieste, the joint venture, or the Metropolis and Xalapa development projects. Defendants must produce such documents to Plaintiffs **by no later than November 23, 2010.** If, after a careful examination, Defendants maintain that they do not pertain to the subject of the parties' joint representation and are therefore irrelevant to this case, Defendants are ordered to submit them to the Court for *in camera* review[4] **by no later than November 23, 2010.**

If Defendants seek to redact any information on any of the documents ordered to be produced to Plaintiffs as specified above on the grounds that the information is not relevant and/or not responsive to Plaintiffs' document requests, Defendants must first provide a detailed list of the proposed redactions to Plaintiffs' counsel **by no later than November 23, 2010.** Mr. Geller and Ms. Peden must then meet and confer in person and with the documents as soon as possible after the disclosure of proposed redactions to try to reach agreement. If counsel are unable to reach agreement, the parties may submit a joint letter brief regarding the disputed proposed redactions that is no longer than two pages to the Court by fax **no later than December 6, 2010.** Defendants shall also provide a copy of the documents and proposed redactions to the Court for *in camera* review.

Regarding the documents disclosed on Defendants' November 9, 2010 privilege log at entries 97-102 and 104-114, Defendants are ordered to show cause **by no later than November 23, 2010** as to why the privileges and protections asserted for these documents should not be waived for failure to disclose these documents promptly on a privilege log and why such documents are entitled to be withheld on the basis of privilege. Defendants must also provide an explanation of the identities and positions of each author and recipient of the documents, and submit the documents themselves for *in camera* review by the Court. If the Court determines briefing by Plaintiffs is

---

[4] Normally, a Court should not have to resort to using judicial resources for *in camera* review for basic discovery disputes such as this one. However, Defendants' record in this case has raised concerns which unfortunately justify the expenditure of judicial time to act as a check on Defendants' self-designation of privileged documents.

necessary after reviewing Defendants' response to this Order to Show Cause and the documents, the Court will set forth a briefing schedule.

IT IS SO ORDERED.

Dated: November 18, 2010



_____
DONNA M. RYU
United States Magistrate Judge