**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIESTE, LLC, ET AL.,<br><br>        Plaintiffs,<br><br>  v.<br><br>HILL REDWOOD DEVELOPMENT, ET AL.,<br><br>        Defendants.<br>_____/ | No. C-09-04024 JSW (DMR)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR SANCTIONS** |

**I. INTRODUCTION**

    Plaintiffs filed a Motion for Sanctions pursuant to Federal Rule of Civil Procedure 26(g) citing two bases for imposition of sanctions. Defendants responded, followed by Plaintiffs' reply. *See* Docket Nos. 159, 161-165. The Court conducted a hearing on January 20, 2011, during which the parties were provided an opportunity to present argument. Having considered the parties' briefs and accompanying submissions as well as oral argument, the Court hereby **GRANTS** Plaintiffs' Motion for Sanctions. This Order summarizes the rulings made by the Court at the January 20, 2011 hearing.

    Plaintiffs did not submit evidence supporting the amount of sanctions as part of their moving papers. At the January 20, 2011 hearing, the Court ordered briefing from both sides as to the amount of reasonable attorneys' fees and costs that should be awarded to Plaintiffs as a sanction against Defendants. *See* Docket Nos. 177 & 184. Having considered the parties' submissions, and

having deemed that the matter appropriately may be decided on the papers without oral argument, this Order also contains the Court's ruling as to the amount of sanctions that should be levied against Defendants and/or their counsel in the form of attorneys' fees and costs payable to Plaintiffs.

## II. LEGAL STANDARDS

Plaintiffs moved for sanctions pursuant to Federal Rule of Civil Procedure 26(g)(3). Rule 26(g) requires attorney certification of initial disclosures and discovery responses indicating that they are complete and correct to the best of the attorney's knowledge, information and belief, formed after a reasonable inquiry. In addition, Rule 26(g)(1)(B)(i) requires that objections to discovery requests be "consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law."

Rule 26(g)(3) provides that "if a certification violates the rule *without substantial justification*," the court "*must impose an appropriate sanction*..." (emphasis added). Thus, sanctions are mandatory if a party acts without substantial justification. The rule does not require a finding of bad faith. *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 555 (N.D. Cal. 1987).

## III. ANALYSIS

### A. Sanctions Regarding Defendants' Failure to Properly Identify Steven Freiberg As An Executive and Officer of Defendant Redwood Capital Advisors

In June 2010, Defendants first named Steven Freiberg as a person with knowledge of issues in the case in their supplemental initial disclosures. Defendants identified Mr. Freiberg as an employee of ZAC Management Group ("ZAC"), which is not a party to this lawsuit. At that time, Defendants did not indicate in any way that Mr. Freiberg held positions with Defendant Redwood Capital Advisors, LLC ("RCA").

In July 2010, Defendants served objections to a document subpoena propounded by Plaintiffs, and took the position that Mr. Freiberg was a "non-party."

In August 2010, Plaintiffs sought to depose Mr. Freiberg. Relying upon Defendants' discovery responses that indicated Mr. Freiberg was a third party, Plaintiffs issued a deposition subpoena, and asked Defendants whether they would accept service as a courtesy. Defendants

2

refused. As a result, Plaintiffs incurred $860 in costs associated with serving the subpoena on Mr. Freiberg.

Acting upon information gained through discovery, Plaintiffs subsequently propounded a request for admission that asked Defendants to admit that Mr. Freiberg is Defendant RCA's Chief Financial Officer. On October 18, 2010, Defendants submitted a verified response *denying* that Mr. Freiberg held that title. However, ten days later, without explanation, Defendants submitted an amended response in which they *admitted* that Mr. Freiberg was, in fact, the Chief Financial Officer and Vice President of Defendant RCA. Plaintiffs subsequently requested that Defendants reimburse them for the costs of serving Mr. Freiberg's subpoena. Defendants refused.

Plaintiffs argue that Defendants' late and unexplained correction of Mr. Freiberg's identity amounted to "improper discovery tactics." Plaintiffs claim that Defendants deployed the correction for tactical advantage, and that disclosing Mr. Freiberg's executive title and RCA affiliation served Defendants' purposes by buttressing a claim of privilege that became the subject of a motion to compel. Defendants respond that they had an "objectively reasonable belief" that Mr. Freiberg was not affiliated with RCA until they learned otherwise in mid-October 2010, because Mr. Freiberg's email address and other workplace information indicated that he works only for ZAC.

At the hearing, defense counsel admitted that in making initial disclosures and in preparing verified discovery responses, no one ever picked up the phone and directly asked Mr. Freiberg what titles he holds and in which companies he holds them. It is clear from Defendants' briefing that the manner in which RCA organizes its business and operations lends itself to confusion about the roles of particular individuals:

> [Mr. Freiberg's] job responsibilities as Vice President of Finance and CFO of ZAC Management are identical to his job responsibilities as Vice President of Finance and CFO of RCA -- he oversees the accounting and back office services for each individual entity. ... Although RCA and ZAC Management are two separate entities, when Freiberg is performing the back office services for RCA, there is no way for him to distinguish whether he is acting as the Vice President of Finance and CFO of ZAC or the Vice President of Finance and CFO of RCA. ... For instance, when Freiberg prepares a general ledger for RCA, there is no way to distinguish [his] actions as those of the CFO of ZAC (which contracted with RCA for those services), or as the CFO of RCA.

Docket No. 161, Defendants' Opposition to Motion for Sanctions at 2:14-21.

3

1    The Court need not, and does not find that Defendants' actions amounted to bad faith.
2 However, given that: (1) Defendant RCA's style of operations is not straightforward and may
3 require further clarification of titles; (2) Mr. Freiberg is a high-ranking RCA executive and officer
4 (as opposed to a lower level employee); and (3) Defendants did not make the simple effort to contact
5 Mr. Freiberg directly to obtain correct information, Defendants' efforts did not amount to a
6 "reasonable inquiry."  Their position was not "substantially justified" as required by Rule 26.  The
7 Court must therefore impose an "appropriate sanction."  The Court finds that the appropriate
8 sanction is that Defendants reimburse Plaintiffs for the $860.00 in costs they incurred in serving the
9 subpoena on Mr. Freiberg, costs that would have been avoided had Defendants provided accurate
10 information about Mr. Freiberg's title and party affiliation in the first instance.

**B.     Sanctions Regarding Defendants' Withholding of Documents on the Basis of Attorney/Client Privilege**

13    The second basis for Plaintiffs' Motion for Sanctions rests on Defendants' assertion of
14 attorney/client privilege and work product protection with respect to dozens of documents.  A
15 dispute arose regarding these documents, and Plaintiffs filed a motion to compel production of the
16 documents.  *See* Docket No. 138 (Plaintiffs' first motion to compel).  In light of the numerous
17 discovery motions that had already been filed in this case, the Court ordered lead counsel for each
18 side to meet and confer in person at the courthouse to attempt to resolve, or at least narrow the
19 disputes to those that appropriately required judicial intervention.  *See* Docket No. 139.  Plaintiffs
20 eventually filed a renewed motion to compel production of the documents; Plaintiffs' positions were
21 wholly sustained.  *See* Docket Nos. 140 (Plaintiffs' renewed motion to compel) & 156 (Order
22 Granting Plaintiffs' Motion to Compel).
23    Plaintiffs now seek sanctions, arguing that Defendants' claims of privilege were "baseless"
24 and without justification.  Defendants respond that the positions they took on privilege were "not
25 frivolous."  In so doing, Defendants focus on only one of the arguments that they made in support of
26 their claims of privilege: that even though Defendants had *jointly* retained a law firm with Plaintiffs
27 to advise them about the projects at issue in this case, some documents fell outside the scope of the

4

joint representation and the resulting privilege with the law firm attached only to Defendants.[1] Although Defendants ultimately were unsuccessful on this argument (*see* Docket No. 156, Order at 4-8), the Court need not determine whether the position they took with respect to that particular argument was substantially justified. This is because Defendants withheld many other documents without any recognized justification.

For example, examination of Defendants' privilege log entries indicated that numerous documents were clearly and facially *within* the scope of the joint representation agreement, and that Defendants had no basis for withholding them. Examination of the documents themselves confirmed this. As another illustration, Defendants withheld many emails circulated between Defendants' officers and individuals who worked for third-party ZAC, because one of the ZAC employee-recipients was an attorney. However, there was no attorney-client privilege between Defendants and ZAC, and the emails in question contained no legal advice whatsoever. As a final example, Defendants withheld an email circulated among some principals of Defendants as containing "communications with legal counsel." Upon examination of the email, it appeared that the lawyer in question had no attorney-client relationship with Defendants, and the email communication did not contain legal advice; in short, there was no possible basis for withholding it.

Defendants should not have persisted in withholding clearly non-privileged documents, particularly in light of the fact that the parties had already been ordered to meet and confer in person at the courthouse, and to thoroughly vet the parties' positions and narrow the motion accordingly. Defendants' actions were not substantially justified, and resulted in an unnecessary expenditure of time and resources by Plaintiffs and the Court. The Court finds that an appropriate sanction in this case is to order Defendants and/or their counsel to reimburse Plaintiffs for the attorneys' fees and costs incurred in bringing the motion to compel production of the documents.

C. **Reasonable Attorneys' Fees and Costs**

---

[1] Defendants filed a 16-page opposition brief in this Motion for Sanctions. They devoted less than one page to defending the positions they took with respect to their asserted claims of privilege. *See* Docket No. 161 at 12-13.

As to the proper amount of sanctions, Plaintiffs argue that they should be compensated for 44.3 hours of work spent by their lead counsel in connection with the renewed motion to compel at an hourly rate of $375.  *See* Docket No. 177-1, Peden Decl.  Defendants argue that the number of hours claimed are excessive and insufficiently substantiated.  Further, Defendants argue that Plaintiffs' counsel's time should be compensated at an hourly rate of $275, as that is the rate she sought and was recently awarded in connection with a discovery motion in this case that was filed in the Eastern District of New York.  *See* Docket Nos. 184 & 185.

The starting point for determining reasonable attorneys' fees is the "lodestar," which is calculated by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  In determining a reasonable amount of hours, the Court must review time records to decide whether the hours claimed by the applicant are adequately documented and whether any of the hours were unnecessary, duplicative or excessive.  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds,* 808 F.2d 1373 (9th Cir. 1987).  To determine reasonable hourly rates, the Court must look to the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience and reputation.  *Camacho*, 523 F.3d at 979.

Having carefully reviewed the time records submitted by Plaintiffs, the Court finds that the number of hours claimed by Plaintiffs is reasonable, and the time spent does not appear to be unnecessary, duplicative or excessive.  An appropriate sanction in this instance arguably could have included time spent by Plaintiffs on both the original motion to compel and the renewed motion, as well as on the motion for sanctions; all were the result of Defendants' unjustified discovery positions.  However, the Court determined that a more appropriate sanction in this instance should be limited to those fees incurred by Plaintiffs solely in connection with the renewed motion to compel.  In accordance with the Court's instructions at the January 20, 2011 hearing on the motion, Plaintiffs seek only those attorneys' fees incurred with the renewed motion to compel.  Plaintiffs do not seek time spent in the meet and confer process, given that such efforts would have been required regardless of whether Plaintiffs had to bring any motion to compel.  Plaintiffs' counsel's work on the

renewed motion to compel was incurred as a result of the positions taken by Defendants regarding non-privileged documents that were not substantially justified, positions taken even after the parties were ordered to meet and confer.  The Court also finds that Plaintiffs' counsel exercised significant billing judgment in connection with Plaintiffs' request for fees, seeking compensation for time spent by lead counsel only on the motion to compel; Plaintiffs do not seek reimbursement for time spent by any other attorney or paralegal, nor do they seek reimbursement for costs associated with the motion.

Defendants argue that the supporting time records submitted by Plaintiffs include duplicative time attributed to other attorneys, and that several of the entries reflect work such as reviewing exhibits that is both clerical in nature and unwarranted in this instance.  Defendants also argue that Plaintiffs have not established that the supporting time records are authentic and were contemporaneously prepared.  These arguments are unavailing.  First, the Court finds that the records do not reflect duplicative billing.  There is no indication that Plaintiffs seek anything more than time reasonably spent by Ms. Peden in preparing the motion.  Indeed, Plaintiffs' exercise of significant billing judgment supports that they have not sought payment for unnecessary or duplicative work.  Second, while tasks such as reviewing exhibits and comparing versions of Defendants' privilege logs may appear to be clerical work, such is not the case here.  Plaintiffs' counsel's review of the logs generated meritorious arguments about the validity of Defendants' privilege objections that were presented to the Court in Plaintiffs' reply brief.  With respect to Defendants' objections about the sufficiency of the time records submitted by Plaintiffs, the Court specifically instructed Plaintiffs at the hearing on the motion for sanctions that they did not need to submit individual time records.  The Court finds that the records submitted by Plaintiffs are adequately detailed so as to enable the Court to evaluate the work performed by counsel on particular days and tasks.

Finally, the Court finds that the $375 hourly rate sought by Plaintiffs' counsel is well within the range of reasonable hourly rates for attorneys of comparable skill, experience and reputation litigating similar cases in the San Francisco Bay Area.  Ms. Peden explained that the current hourly rate she charges for work in the Bay Area is $375.  She went on to explain that she sought a $275

hourly rate in the Eastern District of New York based on guidance she received from local lawyers about the appropriate market rate for that geographic area. The Court concludes that the $375 rate is warranted here, given that in determining the proper rate for this motion, the Court must use the prevailing rate in the Northern District of California, and not what it might be in the Eastern District of New York. *Camacho*, 523 F.3d at 979.

Therefore, the Court awards sanctions pursuant to Rule 26(g)(3) in the amount of $16,612.50. The Court notes that it does not make any specific allocation as to whether the fees should be paid by Defendant itself or by its counsel. However, the Court notes that, at the hearing, defense counsel conceded that the positions Defendants took in connection with Plaintiffs' motion to compel were largely the result of defense counsel's decisions. The sanctions shall be paid to Plaintiffs within forty-five (45) days of the date of this Order.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion for sanctions and awards Plaintiffs fees in the amount of $16,612.50 and costs in the amount of $860.00.

IT IS SO ORDERED.

Dated: February 10, 2011



_____
DONNA M. RYU
United States Magistrate Judge

8