United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIESTE, LLC, ET AL., | No. C-09-04024 JSW (DMR) |
| Plaintiffs, | **ORDER REGARDING PUNITIVE DAMAGES AND ALTER EGO DISCOVERY** |
| v. | |
| HILL REDWOOD DEVELOPMENT, ET AL., | |
| Defendants. | |
| _____/ | |

## I. INTRODUCTION

On February 14, 2011, the parties submitted a joint letter brief setting forth the parties' dispute regarding discovery of information that Plaintiffs argue is relevant to their punitive damages claims and/or the alter ego theory of liability. *See* Docket No. 204. The Court conducted a hearing on March 3, 2011, during which the parties were given an opportunity to present their arguments. This Order summarizes the rulings made by the Court on the record during the March 3, 2011 hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed suit against Defendants alleging, *inter alia*, claims of breach of contract and fraud arising out of the parties' October 2008 agreement to form a joint venture to pursue real estate development opportunities in Metropolis, Illinois and Xalapa, Mexico. In their Second Amended Complaint, Plaintiffs allege that Defendant Hill International Development, Ltd. ("HID") is the alter

1  ego of Defendant Hill International, Inc. ("Hill International"), and that Defendant Hill Redwood
2  Development, Ltd. ("HRD") is the alter ego of Hill International and Defendant Redwood Capital
3  Advisors, LLC ("RCA").  Docket No. 98, ¶¶ 46-76.  Plaintiffs seek an award of punitive damages as
4  to their first and third causes of action for fraud/intentional misrepresentation and constructive fraud.
5  *See* Docket No. 98.

6  Plaintiffs now seek an order compelling further responses by Defendants HID, Hill
7  International, HRD, RCA, and individual defendants Stephen Goodman and S. Dick Sargon to
8  discovery relating to Plaintiffs' punitive damages claims, as well as other information relevant to
9  their alter ego theory of liability.  Plaintiffs also seek an order compelling the production of
10 Defendants' tax returns.  The Court will address each category of information sought in turn below.

### III. DISCUSSION

#### A. Punitive Damages Discovery

Plaintiffs seek further responses to discovery pertaining to Defendants' net worth and financial condition in support of their claims for punitive damages. Discovery of Defendants' net worth and financial condition is clearly relevant to the issue of punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981) (noting that "evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded...").  Defendants argue that such discovery should not be granted because 1) information regarding their net worth and financial condition is protected by the right of privacy; and 2) Plaintiffs have made no initial showing of entitlement to punitive damages.

In this diversity action, state law governs privilege claims.  Fed. R. Evid. 501.  In California, the right to privacy is set forth in Article I, Section I of the California Constitution.  The constitutional right to privacy is not absolute; rather, it must be balanced against the countervailing public interests in disclosure. *Hill v. Nat'l Collegiate Athletic Ass'n,* 7 Cal. 4th 1, 37-38 (1994); *see also Hooser v. Superior Court*, 84 Cal. App. 4th 997, 1004 (2000).  Factors to consider in balancing the right of a civil litigant to discover relevant facts with a party's right to maintain reasonable privacy in sensitive affairs include "the purpose of the information sought, the effect that disclosure will have on the affected persons and parties, the nature of the objections urged by the party resisting

disclosure and availability of alternative, less intrusive means for obtaining the requested information." *Hooser*, 84 Cal. App. 4th at 1004.

Applying a balancing test, the Court concludes that information and documents relating to Defendants' net worth and financial condition (with the exception of Defendants' tax returns, discussed further *infra*) should be disclosed. The interests favoring disclosure, including "facilitating the ascertainment of truth in connection with legal proceedings" (*Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 316 (1982)) and obtaining "just resolution of legal claims" (*Valley Bank of Nev. v. Superior Court*, 15 Cal. 3d 652, 657-658 (1975)), outweigh the interests favoring nondisclosure. As only one of the defendants (Hill International) has publicly-available financial documents, Plaintiffs have no other way to obtain information about Defendants' net worth and financial condition. Such information is a prerequisite to an award of punitive damages. *Adams v. Murakami*, 54 Cal. 3d 105, 114-116 (1991). Further, there is a protective order in effect in this case, thereby accommodating Plaintiffs' need for the information while protecting Defendants' privacy.[1] *See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D. Cal. 1998) (party's interest in the confidentiality of its financial information can be adequately addressed via a protective order); *see also Hill*, 7 Cal. 4th at 38 (privacy concerns "assuaged" where "intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know").

In the alternative, Defendants argue that information regarding their net worth and financial condition should not be produced until later, either after Plaintiffs have made some showing of their entitlement to punitive damages, or after the liability phase of a bifurcated trial. While some federal courts have required a prima facie showing of entitlement to punitive damages before ordering discovery, the majority have not. *See Charles O. Bradley Trust v. Zenith Capital, LLC*, 2005 WL 1030218, at *3 (N.D. Cal. May 3, 2005) (listing cases); *see also EEOC v. Cal. Psychiatric Transitions, Inc.*, 258 F.R.D. 391, 394-395 (E.D. Cal. 2009). Defendants cite *Garcia v. Imperial*,

---

[1] At the March 3 hearing, the Court instructed the parties to meet and confer to revise the existing protective order to address concerns raised by defense counsel regarding the treatment, usage and eventual destruction of protected financial information disclosed through discovery.

3

2010 WL 3063289 (S.D. Cal. Aug. 2, 2010) (overruled on other grounds) to support their position that Plaintiffs are required to make a showing of entitlement to punitive damages before discovery of private financial information may proceed. However, *Garcia* is distinguishable from this case, as it involved § 1983 claims against individual police officers for alleged excessive use of force. Such cases implicate an additional layer of liability analysis on the question of qualified immunity for police officers. Under those circumstances, the court concluded that the plaintiff was not entitled to discovery regarding the defendant officers' personal finances absent some showing of entitlement to punitive damages.

The Court also rejects Defendants' more general argument that punitive damage and alter ego discovery should take place later, after a liability trial with appropriate findings. Since this discovery dispute raises trial management issues, the Court consulted with District Judge Jeffrey S. White, the trial judge in this matter. Given that the discovery period in this case is nearly complete, and given that a trial could reach the issues of punitive damages and alter ego theory if Plaintiffs establish liability, Judge White indicated that from a case management perspective, discovery on punitive damages and alter ego should go forward at this time but should be appropriately narrowed so as not to blossom into a new litigation front. Moreover, this Court notes that information on Defendants' finances is "valuable to both parties in making a realistic appraisal of the case and may lead to settlement and avoid protracted litigation." *Charles O. Bradley*, 2005 WL 1030218, at *3. For all of these reasons, the discovery should proceed now rather than later.

For the purposes of punitive damages, Plaintiffs are entitled to discover only those documents and information necessary to establish Defendants' current financial condition and net worth. To that end, Plaintiffs' document requests and interrogatories are overbroad. For example, Plaintiffs propounded discovery seeking each Defendant's net and annual profits from 2006 to the present. Discovery of Defendants' net worth and financial condition should be limited to information about each defendant's *current* assets and liabilities, given that "past earnings and net worth cannot reasonably lead to relevant information on the issue of punitive damages." *Hughes v. Groves*, 47 F.R.D. 52, 55 (W.D. Mo. 1969); see also *S. Cal. Housing Rights Ctr. v. Krug*, 2006 WL 4122148, at *2 (C.D. Cal. Sept. 5, 2006) (request for production of documents relevant to

defendants' financial condition for ten-year period "unnecessarily broad"; documents for two-year period ordered produced to plaintiff). Therefore, for the purposes of discovering information relevant to the issue of punitive damages, each Defendant is ordered to produce documents and provide supplemental interrogatory responses sufficient to establish net profits on an annual basis for the time period January 1, 2009 through the present.[2]

### B. Alter Ego Discovery

Plaintiffs seek additional discovery into information relevant to their alter ego theories of liability pleaded in the Second Amended Complaint. Defendants argue that such discovery is overbroad, improper and premature, asserting that "a claim for alter ego pertains only to the issue of from whom a judgment may be collected if and when it is obtained." Docket No. 204 at 6.

Pursuant to the alter ego doctrine, "when a corporation is the mere instrumentality or shell of another corporation or person, a court will disregard the corporate entity and hold the 'underlying' corporations or individuals responsible for their acts knowingly and intentionally done in the name of the corporation." *Charles O. Bradley*, 2005 WL 1030218, at *5. Under California law, there are two requirements to prove that an entity is an alter ego: (1) there must "be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist," and (2) "if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985); *see also McLaughlin v. L. Bloom Sons Co.*, 206 Cal. App. 2d 848, 851 (1962) (the same two requirements apply when the entity sought to be held liable is another corporation instead of an individual).[3]

---

[2] At the hearing on this matter, Plaintiffs clarified that a number of their discovery requests pertaining to Defendants' financial condition were relevant not only to the issue of punitive damages, but also to their claims of alter ego liability. To the extent that Defendants' financial information is relevant to both punitive damages and alter ego liability, the Court notes that the portion of this Order limiting discovery of Defendants' financial information to Defendants' *current* financial condition and net worth pertains only to discovery sought by Plaintiffs for the purpose of punitive damages.

[3] California law on alter ego liability, also commonly known as "piercing the corporate veil," is substantially similar to the rule announced in federal cases. *See Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1236 n.6 (N.D. Cal. 2004). In the Ninth Circuit, the test "requires a determination whether: (1) there is such a unity of interest between the corporate personalities that they do not function as separate personalities and (2) failure to disregard the separate nature of the corporate entities would result in fraud or injustice." *Id.* at 1246, *citing Doe v. Unocal Corp.*, 248

For the first requirement, courts have considered the following nine factors: "(1) commingling of funds and other assets; (2) failure to segregate funds of the separate entities; (3) the unauthorized diversion of corporate funds or assets to other than corporate uses; (4) the total absence of corporate assets; (5) the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; (6) concealment of personal business activities; (7) the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of the creditors; (8) the manipulation of assets and liabilities between entities so as to concentrate te assets in one and the liabilities in another; and (9) the use of a corporation as a subterfuge of illegal transactions." *Charles O. Bradley*, 2005 WL 1030218, at *6.

For the reasons set forth earlier in this decision, the Court orders that alter ego discovery should proceed at this time, rather than later. The information and documents sought by Plaintiffs relevant to alter ego liability, such as employee data, bank account and other financial information, is sensitive and therefore shall be subject to the protective order where appropriate. Per Judge White's instructions, given the late stage of this case, the discovery requests should be narrowly tailored to the relevant alter ego factors only. Consistent with this Court's February 24, 2010 Order (*see* Docket No. 213), the parties are ordered to further meet and confer to determine if they can reach agreement on narrowed requests for documents and interrogatories seeking information relevant to the issue of alter ego liability.

**C.     Tax Returns**

The final category of disputed discovery calls for production of tax returns. Plaintiffs seek an order compelling the production of each Defendant's tax returns from 2008 to the present and each Defendant's monthly or quarterly federal and state tax estimates from July 2008 to the present. Defendants argue that their tax returns are privileged.[4] Docket No. 204 at 9.

---

F.3d 915, 926 (9th Cir. 2001).

[4] Defendants also argue that Plaintiffs are not entitled to this information without a threshold showing that they are entitled to punitive damages. The Court addressed this argument above.

6

Although Defendants cite federal privilege law to argue that their tax returns are privileged and protected from discovery, as previously noted, in this diversity action, state law governs privilege claims. Fed. R. Evid. 501. California courts have created an implied privilege against disclosure of tax returns. *Schnabel v. Superior Court*, 5 Cal. 4th 704, 719-720 (1993). The privilege is not absolute; "the privilege is waived or does not apply in three situations: (1) there is an intentional relinquishment, (2) the gravamen of [the] lawsuit is so inconsistent with the continued assertion of the taxpayer's privilege as to compel the conclusion that the privilege has in fact been waived, or (3) a public policy greater than that of confidentiality of tax returns is involved." *Id*. at 721 (citations omitted); *see also Deployment Med. Consultants, Inc. v. Pipes*, 2010 WL 4853814, at *2 (S.D. Cal. Nov. 23, 2010). The last exception is narrow, and the "[p]ublic policy favoring discovery in civil litigation is not, by itself, sufficiently compelling to overcome the privilege." *Fortunato v. Superior Court*, 114 Cal. App. 4th 475, 483 (2003).

In this case, only the third exception is potentially applicable. However, Plaintiffs have not indicated any compelling public policy that warrants ordering disclosure. Furthermore, Plaintiffs appear to have propounded other document requests and interrogatories sufficient to obtain the relevant information that would otherwise be available through a tax return. This less intrusive method of discovering financial information will likely provide Plaintiffs with the information they seek. Therefore, Plaintiffs' request for an order compelling the production of Defendants' tax returns is denied.

## IV. CONCLUSION

The Court therefore orders as follows:

1. Each Defendant shall immediately produce documents and provide supplemental interrogatory responses to Plaintiffs sufficient to establish net profits on an annual basis for the time period January 1, 2009 through the present.

2. The parties shall further meet and confer regarding documents relevant to the issue of alter ego. The requests should be narrowed both in terms of subject matter and time. Any remaining disputes shall be presented to the Court in a manner consistent with its February 24, 2011 Order. *See* Docket No. 213.

3. Plaintiffs' requests for Defendants' tax returns are denied.

IT IS SO ORDERED.

Dated: March 9, 2011



DONNA M. RYU
United States Magistrate Judge