UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIESTE, LLC, ET AL., | No. C-09-04024 JSW (DMR) |
| Plaintiffs, | **ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR SANCTIONS** |
| v. | |
| HILL REDWOOD DEVELOPMENT, ET AL., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs filed an omnibus Motion for Sanctions pursuant to Federal Rules of Civil Procedure 16, 26, and 37, Civil Local Rule 7-8, and the Court's inherent powers, citing five bases for imposition of sanctions. Defendants responded, followed by Plaintiffs' reply. *See* Docket Nos. 231, 264, 272. The Court conducted a hearing on May 12, 2011, during which the parties were provided an opportunity to present argument. Having considered the parties' briefs and accompanying submissions as well as oral argument, the Court hereby **GRANTS IN PART** Plaintiffs' Motion for Sanctions. In large part, this Order summarizes the rulings made by the Court at the May 12, 2011 hearing. However, upon further review of the record, the Court modifies its ruling with respect to potential witnesses Todd Jorn and Steven Nigro, as set forth below in Section III(A).

1   Plaintiffs did not submit evidence supporting the amount of sanctions as part of their moving
2   papers. At the May 12, 2011 hearing, the Court ordered briefing from both sides as to the amount of
3   reasonable attorneys' fees and costs that should be awarded to Plaintiffs as a sanction against
4   Defendants. *See* Docket Nos. 323 & 326. Having considered the parties' submissions, and having
5   deemed that the matter appropriately may be decided on the papers without oral argument, this
6   Order also contains the Court's ruling as to the amount of sanctions that should be levied against
7   Defendants and/or their counsel in the form of attorneys' fees and costs payable to Plaintiffs.

## II. LEGAL STANDARDS

Plaintiffs moved for sanctions pursuant to Federal Rules of Civil Procedure 16, 26, and 37, Civil Local Rule 7-8, and the Court's inherent powers. Rule 37 authorizes the imposition of various sanctions for discovery violations, including a party's failure to obey a court order to provide or permit discovery and failure to timely supplement initial disclosures and/or discovery responses pursuant to Rule 26(e). Fed. R. Civ. P. 37(b)(2)(A), (c)(1). Such sanctions may include ordering a party to pay the reasonable expenses, including attorneys' fees, caused by its failure to comply with the order or rule.[1] Fed. R. Civ. P. 37(b)(2)(C), (c)(1)(A). Where a party has violated a discovery order or Rule 26's disclosure requirements, a court may direct that certain facts be taken as established for purposes of the action and/or prohibit the party "from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(i), (ii), (c)(1)(C). In addition, a party in violation of Rule 26 may also be prohibited from using "information or [a] witness to supply evidence on a motion, at a hearing, or at trial," unless the failure to disclose the information or witness "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Rule 37 also authorizes sanctions if a party or a person designated under Rule 30(b)(6) fails to appear for that person's deposition. Fed. R. Civ. P. 37(d)(1)(A)(i). The failure to appear "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2). Sanctions

---

[1] Sanctions in the form of the payment of reasonable expenses, including attorneys' fees, are also authorized for a party's failure to obey a pretrial order, "unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2).

for failing to appear for a deposition pursuant to this rule include ordering a party to pay the reasonable expenses, including attorneys' fees, caused by the failure, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

## III.  ANALYSIS

**A.  Sanctions Regarding Defendants' Late Disclosure of Witnesses & Information Pursuant to Rule 26**

Plaintiffs' first basis for sanctions is Defendants' late disclosure of Rule 26(a) witnesses and information. On February 1, 2011, just two weeks before the close of fact discovery, Defendants served Supplemental Initial Disclosures pursuant to Rule 26(a) and (e) in which they identified for the first time six witnesses likely to have discoverable information who Defendants may use to support their claims or defenses. The six late-disclosed witnesses include William Dengler, an officer for three of the entity Defendants, and Lucy Ngan, TaLisha Humphrey, and Maria Rogers, all of whom are former employees of Defendant Redwood Capital Advisors, LLC ("RCA"). Ms. Ngan, Ms. Humphrey, and Ms. Rogers were listed as having knowledge of the development projects at issue in this case. The remaining two witnesses, Steven Nigro and Todd Jorn, are former employees of Pfife Hudson, an investment bank that Defendant Steven Goodman contacted to raise money for the development projects.

Plaintiffs argue that each of the late-disclosed witnesses were well known to Defendants at the outset of the case, and that Defendants' failure to disclose them sooner prejudiced Plaintiffs as they never had the opportunity to discover information from the witnesses. Therefore, Plaintiffs argue, Defendants should be precluded from using the witnesses at trial.[2]

Defendants' sole defense is that their late disclosure of the witnesses to Plaintiffs was harmless because Plaintiffs had previously learned the identities of these individuals during

---

[2] Plaintiffs also argue that a seventh witness, Jasmine Youngblood, who worked for Defendant Goodman at RCA, should also be precluded from testifying on Defendants' behalf. However, Ms. Youngblood was never listed by Defendants in their Initial Disclosures or Supplemental Initial Disclosures. As she has never been disclosed as a witness pursuant to Rule 26, and was not otherwise disclosed per Rule 26(e)(1), Defendants may not use her to offer evidence in accordance with Rule 37(c)(1).

3

discovery, and therefore had the opportunity to pursue follow up discovery with them if they so chose.

Rule 26(a) requires parties to disclose the names and contact information of individuals "likely to have discoverable information" that the disclosing party may use to support its claims or defenses, as well as the subject of the information known by the individuals. Rule 26(e) imposes an affirmative obligation on a party to supplement its initial disclosures "in a timely manner" if the party learns that the disclosures are incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. A party's failure to identify a witness as required by Rule 26(a) and (e) may result in the prohibition of using the witness to supply evidence on that party's behalf "on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Defendants' failure to disclose four of these witnesses until February 1, 2011, two weeks before the close of fact discovery, was not harmless. Even though the names of these four individuals appear to have come to light during the course of discovery, the information Plaintiffs learned about them at the time was insufficient to indicate to Plaintiffs that they possessed information that supported Defendants' claims or defenses. For example, Defendants point to the fact that in June 2010, deponent Terresa Cordova-Goodman identified witnesses Lucy Ngan, TaLisha Humphrey, and Maria Rogers as having worked at RCA's offices. Defendants argue that this was sufficient to put Plaintiffs on notice such that they could make an informed decision about whether to pursue discovery as to those individuals. However, Ms. Cordova-Goodman actually testified that she did not know if those individuals worked on the projects at issue in this case. *See* Docket No. 165 at 11. Moreover, as discussed below in Section III(C), Defendants provided an evasive and ultimately misleading interrogatory response that further obscured the role played by these three individuals. It was only upon Defendants' last minute supplementation of their initial disclosures that Plaintiffs learned they not only worked for Defendant RCA, but actually had percipient knowledge about the projects at issue in this case.

Plaintiffs claim that they had no notice of William Dengler's importance to the case until Defendants' February 1, 2011 initial disclosure supplementation. Defendants claim otherwise, but

4

do not point to any discovery or other evidence to support their conclusory statement. On February 10, 2011, five days before the discovery cut-off, Defendants produced Dengler to testify about certain topics pursuant to a Rule 30(b)(6) deposition notice. Had Plaintiffs received notice that Dengler had knowledge supporting Defendants' case, either through a timely Rule 26(e) supplementation, or through the other means identified in Rule 26(e)(1), Plaintiffs would have had a meaningful opportunity to take discovery regarding Dengler's knowledge. Defendants' late disclosure deprived Plaintiffs of that opportunity.

With respect to Todd Jorn and Steve Nigro, it appears their names came up in a July 2010 deposition. Deponent Marc Goldin testified that Jorn and Nigro were present at a meeting with Defendant Stephen Goodman regarding potential financing for the projects at issue in this case. Docket 233-11 (Goldin Depo.) at 47. The information regarding Jorn and Nigro thus was "made known to [Plaintiffs] during the discovery process," per Rule 26(e)(1), which discharged Defendants' duty to supplement their disclosures with respect to these two individuals.

The purpose of Rule 26 disclosures is to identify those witnesses that a party intends to use at trial. *See* Advisory Committee Notes to 2000 Amendments to Fed. R. Civ. P. 26(a)(1). This enables the opposing party to plan its discovery, including depositions, based on the disclosures. Had Defendants properly disclosed four of these witnesses, either in their initial disclosures or in a timely supplementation pursuant to Rule 26(e), Plaintiffs would have been adequately informed that these individuals possessed discoverable information that supported Defendants' case and could have made educated choices about how best to use their discovery resources. Further, Defendants have offered no evidence or argument that their failure to disclose these witnesses was substantially justified. Therefore, Defendants are precluded from using William Dengler, Lucy Ngan, TaLisha Humphrey, and Maria Rogers to supply evidence on Defendants' behalf "on a motion, at a hearing, or at trial." Fed. R. Civ. P. 37(c)(1).

In addition, Defendants were late in identifying an insurance agreement that had not previously been disclosed to Plaintiffs. Parties must provide "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action" as part of their initial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(iv). Plaintiffs have not argued that the late

5

disclosure of the insurance agreement prejudiced them in any way. Therefore, the Court finds that Defendants' late disclosure of the policy is harmless and accordingly does not sanction Defendants for their failure to comply with Rule 26(a)(1)(A)(iv).

### B. Sanctions Regarding Defendants' Failure to Certify Supplementation of Discovery Responses

Plaintiffs next argue that Defendants should be sanctioned for violating a pretrial order. In his February 22, 2010 Order Scheduling Trial and Pretrial Matters, the Honorable Jeffrey S. White, the trial judge in this matter, ordered "lead counsel for each party [to] serve and file a certification that all supplementation [of disclosures and discovery responses pursuant to Rule 26(e)] has been completed" 30 days before the close of non-expert discovery. *See* Docket No. 39. Given the February 15, 2011 deadline to complete non-expert discovery, the parties' certification was due January 17, 2011. However, Defendants did not file a certification on that date, and in fact supplemented their initial disclosures two weeks later, on February 1, 2011. At the May 12, 2011 hearing on the present motion, Defendants confirmed that they *still* had not complied with Judge White's order to certify the supplementation of disclosures and discovery as of that date.[3]

Defendants state that they did not complete their review of their "thousands of previous discovery responses" in this case on time and so "regrettably did not submit a timely certification," and that their failure to do so was "inadvertent." The Court notes that Defendants did not at any time seek leave to extend the deadline for complying with the certification deadline.

During the course of presiding over a dozen or more discovery disputes in this case, this Court repeatedly has admonished defense counsel regarding their handling of discovery obligations, as well as failures to meet court-imposed deadlines. It does not appear that defense counsel has intentionally mishandled discovery or has acted in bad faith. However, it has consistently appeared that there has been insufficient coordination and oversight of discovery that has not only resulted in numerous unnecessary discovery motions but has significantly impeded Plaintiffs' ability to discover information about the case in an orderly manner as prescribed by the rules of civil

---

[3] On May 18, 2011, Defendants finally complied with the order and filed a certification that the supplementation was complete, four months after the deadline to do so. *See* Docket 321.

6

procedure. Defendants' repeated failure to timely produce information in the course of discovery has hampered Plaintiffs' ability to conduct its own discovery in this case and thus to prepare for summary judgment and for trial. In this instance, the Court finds that the payment of reasonable expenses, including attorneys' fees, by defense counsel to Plaintiffs for the failure to comply with the order to certify supplementation of disclosures and discovery responses pursuant to Rules 37(b)(2)(C) and 16(f)(2) is appropriate, as discussed further *infra*.

**C.     Sanctions Regarding Defendants' Failure to Supplement Discovery Responses**

Plaintiffs next argue that Defendants' response to an interrogatory impermissibly conflicts with newly-disclosed information in their Supplemental Initial Disclosures. Specifically, in response to Interrogatory No. 1, "Separately for each person employed by you, who worked in any capacity on the [projects], describe that person's job responsibilities," Defendant RCA responded in September 2010 that "no employee of [RCA's] in his/her capacity as [RCA's] employee worked on these projects. Docket 233-6 at 4. However, five months later, in their Supplemental Initial Disclosures, Defendants identified three former RCA employees, TaLisha Humphrey, Lucy Ngan, and Maria Rogers, as having worked on the projects, describing their work as "preparation of financial materials and other items used to solicit investment in the Xalapa and Metropolis projects." Docket 233-3 at 9. In addition, in his February 2011 deposition, Defendant Goodman identified a fourth former RCA employee, Jasmine Youngblood, as having worked on the projects. Docket No. 233-9, 37-38.

Plaintiffs argue that if Humphrey, Ngan, Rogers, and Youngblood worked on the projects, then they should have been identified in Defendants' interrogatory response; if they did not, then the information in Defendants' Supplemental Initial Disclosures is false. Defendants' position is that their response to Interrogatory No. 1 is not incorrect, arguing that there is no conflict between the response and their Supplemental Initial Disclosures because the Supplemental Initial Disclosures "do not state that Humphrey, Ngan and Rogers worked on the projects in their capacity as employees of RCA." Docket No. 264 at 13.

Rule 26(e) imposes an affirmative obligation on a party to supplement a discovery response in a timely manner if the party learns that the response is incomplete or incorrect "in some material

7

respect." Where a party has failed to do so, a court may direct that "designated facts be taken as established for purposes of the action." Fed. R. Civ. P. 37(b)(2)(A)(i), (c)(1)(C).

Upon questioning of defense counsel at the hearing on this motion, as well as upon further review of the record, it is clear that Humphrey, Ngan, Rogers, and Youngblood were in fact RCA employees who worked on the projects at issue. Defendants have offered nothing to contradict that fact. Defendants' insertion of evasive language into their interrogatory response -- "no employee . . . *in his/her capacity* as [RCA's] employee"-- essentially rendered their response non-responsive. Defendants' supplemented initial disclosures support that these witnesses should have been identified in their interrogatory response. Therefore, given Defendants' failure to supplement their response to Interrogatory No. 1 as required by Rule 26(e), it is deemed established for purposes of this action that TaLisha Humphrey, Lucy Ngan, Maria Rogers, and Jasmine Youngblood were RCA employees who worked on the Xalapa and Metropolis projects.

**D.     Sanctions Regarding Defendants' Conduct Regarding Rule 30(b)(6) Deposition**

Plaintiffs next seek sanctions based on Defendants' conduct regarding Plaintiffs' Rule 30(b)(6) deposition of Defendant Hill International Development, Ltd. ("HID") on various topics. In January 2011, Plaintiffs noticed the deposition to take place in San Francisco, California on February 10, 2011. The parties subsequently conferred about the date and location of the deposition, and it is undisputed that Defendants insisted the deposition take place in New Jersey, the location of HID's headquarters. On February 7, 2011, three days before the deposition was to go forward in New Jersey, Defendants served Plaintiffs with objections to the deposition notice. Although Defendants objected to each of the noticed subjects, they did not refuse to produce a witness on any subject, did not seek to meet and confer regarding the noticed subjects, and did not move for a protective order under Rule 26(c).

On February 10, 2011, Plaintiffs' counsel, who had traveled to New Jersey from the Bay Area for the deposition, proceeded with the deposition of William Dengler, the witness Defendants designated to testify on HID's behalf. A few hours into the deposition, defense counsel informed Plaintiffs' counsel for the first time that Dengler was not the corporate designee for all of the noticed subjects, that another witness, Defendant Dick Sargon (who was not present at the deposition),

8

1  would be designated to testify regarding other subjects, and that HID refused to produce a witness
2  for the remaining noticed subjects.

3  Following defense counsel's announcement that HID was not producing a witness on that
4  date to testify regarding half of the noticed subjects, the parties went off the record to try to
5  negotiate a stipulation to continue the deposition as to the remaining subjects after the February 15,
6  2011 discovery cutoff, just five days away. Although it appears the parties agreed to continue the
7  deposition after the cutoff, the parties were unable to reduce their agreement in writing and never
8  reached an agreement as to the scope of the continued deposition. Ultimately, Plaintiffs were unable
9  to complete the deposition.

10  Plaintiffs argue that at a minimum, they should be awarded the expenses they incurred in
11  traveling to New Jersey for the HID deposition due to Defendants' failure to produce a witness to
12  testify as to all of the noticed subjects, pursuant to Rule 37(d)(3). They also argue that Defendant
13  HID should be precluded from "supporting . . . designated claims or defenses" on the subjects for
14  which no witness was tendered. *See* Fed. R. Civ. P. 37 (b)(2)(A)(ii), (d)(3).

15  Defendants do not dispute that they first informed Plaintiffs that Dengler would not testify as
16  to all of the noticed subjects on the day of the deposition itself, after Plaintiffs' counsel had flown to
17  New Jersey. However, Defendants claim that the attorney defending the deposition, David
18  Nemecek, mistakenly believed that his co-counsel had discussed the issues and reached an
19  agreement with Plaintiffs about the HID deposition based on "email traffic" he had read the night
20  before. Docket No. 264 at 6. Defendants claim that it was only on a break midway through the
21  deposition that Mr. Nemecek learned that these discussions had not taken place. However,
22  Defendants have pointed to no document or statement by opposing counsel that would support that
23  mistaken belief.

24  Defendants' failure to discuss in advance the fact that they would be offering two separate
25  witnesses on separate days to testify on some of the noticed subjects, and would not be offering a
26  witness at all on some of the subjects resulted in Plaintiffs' counsel traveling to New Jersey and
27  incurring significant expense. Had Plaintiffs known this information in advance, the parties could
28

9

have met and conferred and agreed to other arrangements for the 30(b)(6) deponents that may not have required counsel to travel across the country.

In evaluating Plaintiffs' request for monetary sanctions (in the form of reimbursement for travel expenses) and for an order precluding Defendant HID from offering a witness on the subjects for which no witness was tendered at deposition, the Court notes that Plaintiffs never moved to compel the production of a witness to testify as to the remaining subjects. By the same token, Defendants could have moved for a protective order but did not; seeking a protective order could have justified a refusal to produce a witness as to all noticed subjects. *See* Fed. R. Civ. P. 37(d)(2). Therefore, the Court concludes that the appropriate sanction for Defendants' failure to produce a witness to testify regarding all of the noticed subjects is an order for defense counsel to reimburse Plaintiffs for the amount of the expenses Plaintiffs' counsel incurred in traveling to New Jersey. However, the Court denies Plaintiffs' request for an order precluding Defendant HID from offering a witness on the subjects for which no witness was tendered.

### E. Sanctions Regarding Defendants' Failure to Comply with Orders to Produce Alter Ego and Funding Discovery

Finally, Plaintiffs seek sanctions for Defendants' failure to comply with two court orders to produce discovery regarding Plaintiffs' alter ego allegations and financing for the development projects. Plaintiffs' complaints regarding this issue go to both the timing of Defendants' production of documents, as well as the substance of their production. The Court will address each issue in turn.

#### 1. Sanctions Regarding Defendants' Late Production of Documents

Regarding the timing of Defendants' production, what follows is a summary of the relevant events and timeline. On March 3, 2011, following a hearing on Plaintiffs' motion to compel production of documents regarding the alter ego allegations and punitive damages, the parties participated in an all-day court-ordered meet and confer session and reached certain agreements regarding the disputed discovery. The parties agreed to produce documents and amended discovery responses by March 11, 2011, in light of the 30(b)(6) depositions of Defendants RCA and Hill

Redwood Development, Ltd. ("HRD") that were scheduled to be completed by March 17, 2011 by stipulation of the parties.

Defendants subsequently requested an extension of time to complete their production. Plaintiffs agreed to the request, and the parties submitted a stipulation and proposed order setting forth Thursday, March 17, 2011 as the new deadline to produce documents and amended discovery responses, and extending the deadline to complete the RCA and HRD depositions to April 8, 2011. On March 14, 2011, this Court entered an order approving both deadlines. *See* Docket No. 222. However, on March 17, Defendants failed to produce the discovery they had agreed to provide, violating the Court's March 14 order. On Friday, March 18, having not received the documents necessary to prepare for the depositions of two of Defendants' experts scheduled for the following Monday and Tuesday (March 21 and 22), Plaintiffs sought an emergency hearing with the Court regarding Defendants' failure to produce the documents. *See* Docket No. 223.

On March 18, 2011, the Court conducted a telephonic hearing with the parties. At that point, it became clear that, although Defendants had missed the March 17 production deadline, and had not sought any relief or attempted to show good cause for an extension, Defendants still had not collected all the responsive documents, and had only processed some of them. The court ordered Defendants immediately to produce all responsive documents in their possession that had been prepared for production. All remaining responsive documents were ordered to be produced by Plaintiffs by no later than March 21. Further, the depositions of Defendants' two experts were continued to the week of March 28, 2011 so that Plaintiffs would have adequate time to prepare following their receipt of the documents. *See* Docket No. 224. The court admonished Defendants for having failed to abide by a Court-ordered deadline and warned Defendants that failure to comply with court orders is sanctionable conduct.

Even after having been admonished, Defendants violated yet another court order, producing documents *three times* after the March 21, 2011 deadline, on April 1, 5, and 8, again without seeking relief. During a telephonic hearing with the parties regarding other discovery disputes on April 6, 2011, the Court learned that Defendants had produced additional responsive documents at 4:00 p.m. on April 1 and April 5, both productions having occurred on the eve of Plaintiffs' depositions of

11

Defendants RCA and HRD. During the April 6 hearing, the Court ordered Defendants to immediately take steps to verify that all responsive documents had been produced, and to confirm to Plaintiffs that all responsive documents had been produced by no later than April 8, 2011. *See* Docket No. 261. Defendants produced additional documents to Plaintiffs on April 8.

Plaintiffs argue that they have been prejudiced by Defendants' repeated failure to comply with court-ordered discovery deadlines. Numerous depositions had to be rescheduled in light of Defendants' failure to produce documents on time, and even after being admonished for violating a court order, Defendants violated yet another court order to produce documents, producing documents on the eve of two critical depositions. Defendants' production of documents after the March 21, 2011 deadline also took place after Plaintiffs had already deposed Defendants' damages expert, denying Plaintiffs the opportunity to question him about certain financial documents produced after his deposition. Therefore, Plaintiffs argue, Defendants should be barred from using the late-produced documents at trial. Defendants offer little by way of explanation of why they violated two court orders, simply stating that at the time of their production on March 21, 2011, they believed they were in compliance with the Court's order, but that they later received additional responsive documents from their clients that they then promptly produced to Plaintiffs.

The Court concludes that Plaintiffs have been prejudiced by Defendants' failure to comply with two court orders to produce discovery. Defendants violated the second order to produce documents even after having participated in a telephonic hearing during which they were admonished for failing to meet a court-ordered deadline and cautioned that they violated court orders at the risk of sanctions. In addition to the prejudice Plaintiffs suffered with respect to having to reschedule depositions and not having documents reasonably in advance of key depositions, Plaintiffs did not have the benefit of all of the documents in advance of the deadline to file their summary judgment motion or to disclose expert witnesses. Therefore, for violating the Court's March 17 and March 21 orders, Defendants are precluded from using any documents produced by Defendants after March 21, 2011 at trial. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii). Plaintiffs are *not* precluded from using documents produced by Defendants after March 21, 2011 at trial.

### 2. Sanctions Regarding the Substance of Defendants' Production of Documents

Plaintiffs also claim that Defendants have failed to comply with the agreements reached by the parties during the March 3, 2011 meet and confer. Specifically, Plaintiffs claim Defendants agreed to produce documents such as W-2's for individuals who worked on the projects, certain non-public financial information, and documents related to the issue of project financing, as well as to provide supplemental responses to interrogatories, but have refused to do so. Plaintiffs argue that Defendants' withholding of the requested discovery on the issues of alter ego liability and the sources of Defendants' project funding warrants sanctions under Rule 37(b) and/or the Court's inherent powers, and request an order deeming certain facts established. Defendants argue that they have fully complied with the parties' agreements regarding the production of financial information, but that they never agreed to provide certain W-2's and non-public financial information for Defendant Hill International, Inc.

Following the March 3, 2011 hearing on Plaintiffs' motion to compel production of documents regarding the alter ego allegations and punitive damages, the Court ordered the parties to participate in an all-day meet and confer session until they reached agreement on the disputed discovery. During the hearing, the Court instructed the parties to discuss the disputes thoroughly, come to agreements and "write them down so everyone understands [the agreements]." The Court checked in on the parties' progress during the day, and late in the evening, offered to record the agreements the parties had reached on the courtroom recording system. The parties declined this offer. The Court also instructed the parties that if there were any remaining disputes after the meet and confer session that required court intervention, the parties were to submit a joint letter pursuant to the Court's Standing Order setting forth the disputes.

Here, Plaintiffs have presented no evidence of the agreements the parties reached during the March 3 meet and confer session on the issues of alter ego and project financing discovery. Further, the parties never filed a joint letter regarding any remaining disputes regarding these issues. Therefore, there is no way for the Court to evaluate whether Defendants failed to comply with any

13

agreement to provide discovery. Sanctions in the form of an order deeming certain facts established are thus not appropriate.

### F. Reasonable Attorneys' Fees and Costs

As to the proper amount of sanctions, during the hearing on this motion, the Court found that there had been a number of breaches of court orders and discovery obligations by defense counsel that justify the imposition of sanctions in the form of reasonable attorneys' fees and costs incurred in bringing this motion. However, Plaintiffs were not successful on certain portions of their sanctions motion. Therefore, the Court ordered Plaintiffs to submit briefing as to the reasonable attorneys' fees and costs that should be awarded to Plaintiffs as a sanction against defense counsel, taking into account that some reduction is appropriate given that Plaintiffs did not prevail on the entire motion.

Plaintiffs argue that they should be compensated for approximately 62 hours of work spent by their counsel in connection with the motion for sanctions at an hourly rate of $375, for a total of $23,385.00. *See* Docket No. 323. Plaintiffs claim that this represents only 75% of the time actually spent by counsel on the motion, and that Plaintiffs reduced the total hours spent to account for the fact that they did not prevail on every issue raised in their motion, consistent with this Court's instruction. Plaintiffs also seek $2,749.79 in expenses incurred in traveling to New Jersey for the 30(b)(6) deposition of Defendant HID.[4] Defendants argue that the number of hours claimed are excessive and unreasonable, and that Plaintiffs' counsel's time should not be compensated at an hourly rate of $375, as Plaintiffs have not justified such an hourly rate. *See* Docket No. 326. Further, with respect to the costs associated with Plaintiffs' counsel's travel to New Jersey, Defendants argue they should not be responsible for all of Plaintiffs' counsel's travel costs; rather, Defendants claim that they should only be responsible for a minor service charge incurred to change one flight due to a later start time for the deposition that was requested by Defendants. *Id*.

---

[4] The amount Plaintiffs initially requested in expenses in connection with counsel's travel to New Jersey was $2,749.79. *See* Docket No. 233 at 4. In their post-hearing briefing regarding reasonable attorneys' fees and costs, Plaintiffs revised the amount of expenses to $2,906.70, claiming that they had inadvertently omitted one item of expense. *See* Docket No. 323 at 6. Upon close examination of the evidence Plaintiffs submitted to substantiate their request for expenses, the Court was unable to arrive at the higher figure, and thus declines to award the revised amount sought by Plaintiffs.

Having reviewed the time records submitted by Plaintiffs, the Court finds that Plaintiffs should be awarded a total of $20,000 in reasonable attorneys' fees and costs, which includes $2,749.79 in costs incurred in connection with Plaintiffs' counsel's travel to New Jersey. This amount takes into account both a reduction in the total number of hours claimed by Plaintiffs due to the fact that they did not prevail on every issue in their motion, as well as the fact that some of the time spent by Plaintiffs on the motion was excessive. The Court finds that the $375 hourly rate sought by Plaintiffs' counsel Courtney Towle is well within the range of reasonable hourly rates for attorneys of comparable skill, experience and reputation litigating similar cases in the San Francisco Bay Area. Therefore, the Court awards sanctions in the total amount of $20,000. The sanctions shall be paid by Defendants and/or their counsel to Plaintiffs within forty-five (45) days of the date of this Order.

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part Plaintiffs' motion for sanctions and awards Plaintiffs fees and costs in the amount of $20,000.

IT IS SO ORDERED.

Dated: June 3, 2011

DONNA M. RYU
United States Magistrate Judge