**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIESTE, LLC, et al., | No. C 09-04024 JSW |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| HILL REDWOOD DEVELOPMENT, LTD., et al., | |
| Defendants. | |
| AND RELATED COUNTERCLAIM | |

**INTRODUCTION**

This matter comes before the Court upon consideration of the Motion for Summary Judgment filed by Vieste, LLC ("Vieste") and Vieste Development, LLC ("Vieste Development"). Vieste and Vieste Development seek summary judgment on the Counterclaims asserted by Hill Redwood Development ("HRD"), Hill International, Inc. ("Hill"), Hill International Development ("HID"), and Redwood Capital Advisors, LLC ("RCA").[1]

The Court has considered the parties' papers, relevant legal authority, the record in this case, and it has had the benefit of oral argument. The Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion.

---

[1] HRD, Hill, HID and RCA also named Michael Comparato ("Comparato") and Donald Currise, Sr. ("Currise") as counterdefendants. Although Comparato and Currise, who are principals of Vieste and Vieste Development, have not moved for summary judgment, because Vieste and Vieste Development can act only through their individual officers, the Court's ruling on this motion applies equally to these individuals.

## BACKGROUND[2]

This dispute arises out of an unsuccessful joint venture, which pertained to the pursuit of development deals in Metropolis, Illinois (the "Metropolis Project") and Xalapa, Veracruz, Mexico (the "Xalapa Project"). Needless to say, there is no love lost between the parties and all sides are dissatisfied with the failure of their business relationship. Hence this litigation. HRD, Hill, HID and RCA (collectively "Counterclaimants") assert Counterclaims for negligent misrepresentation and intentional misrepresentation, and HRD asserts a claim for constructive fraud against Vieste, Vieste Development, Comparato and Currise (collectively, the "Vieste Defendants"). (*See generally* Docket No. 122, First Amended Counterclaim ("FACC").) The facts underlying Counterclaimants' claims against the Vieste Defendants are as follows and, unless otherwise noted, are undisputed.[3]

In July 2008, Comparato, President and Chief Executive Officer ("CEO") of Vieste, was introduced to a representative of Hill. On August 27, 2008, Comparato met with Sargon, and others, in Chicago, Illinois (hereinafter the "August meeting"). At that time, Sargon was Vice-Present of Hill and, according to Sargon, the designated head of HID. (FACC ¶ 17; Docket No. 154, Answer to FACC, ¶¶ 16-17; Docket No. 243, Declaration of Patricia Peden in Support of Plaintiffs' Motion for Summary Judgment ("Peden Supp. Decl."), Ex. G (Deposition of S. Dick Sargon, Vol. I ("Sargon Depo. I"), at 119:15-17).) The parties dispute what representations were made during the August meeting and to whom those representations were made.

Counterclaimants allege that Vieste, through Comparato, told Sargon that "Vieste was on the verge of securing agreements with" Xalapa and Metropolis "for public-private real estate development projects." Counterclaimants also allege that Vieste, through Comparato, told Sargon that Xalapa and Metropolis "were each prepared to sign Joint Operating Agreements

---

[2] The procedural history of this case, which involved prolonged motion practice relating to the pleadings, shall not be repeated in this Order.

[3] From the start of this litigation, all parties have failed to differentiate among the various entities when they have discussed the facts underlying the claims. The parties continue to do so in their briefs in support of these motions. (*See, e.g.,* Docket No. 283, Opp. Br. at 8:12-17.) At this stage of the litigation, the Court shall hold all of the parties strictly accountable to put forth evidence to support each of their claims against each of the other parties.

2

1  ('JOA's') with Vieste (and their potential partners), in which the respective municipalities
2  would provide both the land for use in the development projects and financial support for those
3  projects." (*See* FACC ¶ 18.) Counterclaimants submit evidence that, at the August meeting,
4  Comparato, mentioned that "there are some opportunities that may qualify as P3 [public-private
5  partnerships] and mentioned Metropolis, Mexican projects." (Docket No. 288, Declaration of
6  David Borovsky ("Borovsky Opp. Decl."), Ex. A (Sargon Depo. I at 119:24-120:1, 120:19-25,
7  121-109, 122:6-12).)

8  Between August 27, 2008 and October 15, 2008, Sargon and Comparato continued to
9  discuss possible joint development projects. Although Counterclaimants allege that Comparato,
10 on Vieste's behalf, continued to make representations to Sargon that were similar to those he
11 made at the August meeting, Sargon testified that he cannot recall what, if anything, the Vieste
12 Defendants may have said between August 27 and October 15. (Peden Supp. Decl., Ex. G
13 (Sargon Depo. I at 126:17-127:22).)

14 On October 15 and October 16, 2008, Comparato and Currise, who was Vice-President
15 of Vieste, met with Sargon and Goodman, who was President and CEO of RCA, at RCA's
16 office in Pleasanton, California (hereinafter the "October meetings"). By this time, Goodman
17 and Sargon also were Co-Managing Directors of HRD, which was formed in September 2008.
18 (Peden Supp. Decl., Ex. E at 2782.) Counterclaimants allege that Comparato and Currise, on
19 Vieste's behalf, continued to represent that both Metropolis and Xalapa were prepared to sign
20 JOA's with Vieste, and its potential partners such as Counterclaimants, in which the respective
21 municipalities would provide both the land for use in the development projects and financial
22 support for those projects. (FACC ¶ 22.)[4] Counterclaimants submit evidence that, at the
23 October meetings, the Vieste Defendants represented that "both the city of Xalapa and the State
24 of Veracruz would, from the City of Xalapa point of view [*sic*] they will contribute the
25 appropriate land ... [t]o develop these projects." (Borovsky Opp. Decl., Ex. A (Sargon Depo. I
26 at 137:1-8).) Counterclaimants also submit evidence that at the October meetings, the Vieste

27

28  [4] Counterclaimants also allege that the Vieste Defendants continued to make similar representations to them through March 2009. (FACC ¶ 23.)

3

Defendants made assurances that Xalapa was "ready to enter" a Joint Operating Agreement. (*Id.*, Ex. A (Sargon I Depo. at 163:22-164:11).)

With respect to Metropolis, Counterclaimants present evidence that, at the October meetings, the Vieste Defendants represented that Metropolis would "enable [the parties] to acquire the land necessary for the construction ... that they would use eminent domain or grants or other forms of public participation to acquire the land. That they would make available to [the parties] their – their authority to issue tax exempt bonds and provide some level of credit for these bonds," and that the parties "would also receive ... Tax Increment Financing." (*Id.*, Ex. B (Goodman Depo. at 119:6-120:13); *see also id.*, Ex. B (Goodman Depo. at 83:11-84:7 (stating that Vieste was bringing "[a] development opportunity in the public private partnership space").)

On November 17, 2008, Comparato, Currise, Goodman and Sargon met with Metropolis city officials. On November 26, 2008, Metropolis signed a Memorandum of Understanding ("Metropolis MOU"), with VHR Fund - Metropolis. (Peden Supp. Decl., Ex. A (Metropolis MOU).) The Metropolis MOU provides, in pertinent part, that VHR Fund-Metropolis and the City of Metropolis "intend to enter into an agreement, or series of agreements, that will facilitate the development and construction of a multi-modal district ... within an adjacent to the corporate boundary of the City of Metropolis." (Metropolis MOU at 1.) The MOU also provides that "[t]he City will enter into a joint operating agreement with VHR, which will serve as Master Developer," and that "VHR will provide equity and debt financing for the development and construction." (*Id.*)

On December 2, 2008, Comparato, Currise, Sargon and Goodman met with Xalapa city officials. On December 15, 2008, Comparato, on behalf of VHR Developers LLC, and Xalapa, executed a MOU ("Xalapa MOU"). (Peden Supp. Decl., Ex. B (Xalapa MOU Translation); Borovsky Opp. Decl., Ex. D (Xalapa MOU Translation).)

The Xalapa MOU provides, in pertinent part, that its purpose is to begin to take steps necessary relating to the development projects. (*See* each Xalapa MOU Translation at 1.) The Xalapa MOU also provides that Xalapa will provide required public funding but is obliged to

4

get approval for such funding, and will assist VHR to acquire land, change use of land, and issue construction permits, as permitted by law. (*Id*. at 1-2.) The Xalapa MOU also provides that Xalapa and VHR would agree to enter, or execute, a Joint Operating Agreement, once Xalapa gets certain necessary approvals. The Xalapa MOU also provides that Xalapa will sign a letter of intent, subject to authorization, so that the initiative could begin immediately. (*Id.* at 2.)

Vieste Development was formed on or about December 16, 2008. On that same date, Vieste Development and Hill Redwood executed an Operating Agreement for HRV Development, LLC, the entity that was anticipated to move forward on the Metropolis and Xalapa projects. Neither Metropolis nor Xalapa executed a Joint Operating Agreement with any of the parties to this case. (*See, e.g.,* Peden Supp. Decl., Ex. G (Goodman Depo. at 128:4-17, 129:21-130:7); Borovsky Opp. Decl., Ex. B (Goodman Depo. at 128:4-17, 129:21-130:7).)

The Court shall address additional facts, as necessary, in its analysis.

## ANALYSIS

### A. Legal Standards Applicable to Motions for Summary Judgment.

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to, *inter alia*, depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party may also show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id*. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     Evidentiary Issues.**

      **1.     The Translation of the Xalapa MOU.**

Counterclaimants object to the Vieste Defendants' translation of the Xalapa MOU, submitted as Exhibit B to the Peden Declaration, on the basis that it has not been properly authenticated. Counterclaimants also object on the basis that there is no evidence that the exhibit consists of an authentic and certified translation. In response, the Vieste Defendants submit a declaration from Currise, who attests that Exhibit B "is a true and accurate copy of the MOU signed by the city of Xalapa and of the translation that the joint venture parties in this case ... had prepared for the document. Thereafter, the parties referred to and discussed the [Xalapa] MOU in the form that is attached as" Exhibit B. (Docket No. 300-2, Declaration of Don Currise, ¶ 2.) Counterclaimants also submit a translation of the Xalapa MOU that, in substance, is not materially different from the Vieste Defendants' translation. The Court OVERRULES Counterclaimants' objections.

//

//

6

### 2. The Dombrowski and Freiberg Declarations.

The Vieste Defendants object to the declarations of Charles F. Dombrowski, Hill's Vice President of Financial Planning and Analysis, and Steven H. Freiberg, RCA's CFO, which Counterclaimants submit as evidence of the damages they claim to have suffered. The Vieste Defendants object to the Dombrowski and Freiberg declarations on the basis that Counterclaimants did not disclose these individuals as witnesses with information on damages in their initial disclosures or any supplement thereto and, thus, seek to exclude the declaration under Federal Rules of Civil Procedure 26(a) and 37(c). (*See* Docket No. 34, Reply Declaration of Patricia L. Peden ("Peden Reply Decl."), Exs. 31-33; Docket No. 354, Transcript of Hearing ("Tr.") at 38:14-24.)

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e) the party is not allowed to use that information or witness to supply evidence on a motion ... unless the failure was substantially justified *or* is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). Rule 26(e) requires that "[a] party who has made a disclosure under Rule 26(a) ... must supplement or correct its disclosure ... in a timely manner if the party learns that in some material respect the disclosure ... response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing..." Fed. R. Civ. P. 26(e).

Counterclaimants concede they did not disclose Dombrowski in their initial disclosures. They suggest, however, that his identity and the information he possessed was "made known ... during the discovery process," because he was produced for a deposition at the Vieste Defendants' behest. Counterclaimants also argue that the topics addressed by his declaration were addressed in his deposition. (Tr. at 40:18-41:2.) The Vieste Defendants do not dispute they were able to depose Dombrowski, and they did not refute Counterclaimants' argument that his deposition covered the topics set forth in his declaration. (*See id.* at 40:18-42:22.) However, they argue that they asked to depose Dombrowski only because another 30(b)(6) witness identified him as a person with knowledge on specific topics. The Vieste Defendants

7

also argued, without contradiction, that Dombrowski was identified "long after the close of fact discovery."

The Court is not satisfied that the information regarding Dombrowski or his knowledge about Counterclaimants' damages was made known to the Vieste Defendants during the discovery process. Therefore, the Court finds that Counterclaimants' failure to identify Dombrowski in their initial disclosures and the supplements thereto is not substantially justified. The Court GRANTS the Vieste Defendants' request to exclude the Dombrowski Declaration under Rule 37(c)(1).

The Court does not write on a blank slate with respect to Freiberg, who was the subject of a motion for sanctions addressed to Magistrate Judge Ryu. (*See* Docket No. 192, Order Granting Plaintiffs' Motion for Sanctions dated Feb. 10, 2011 ("Feb. 10 Order").) Counterclaimants did identify Freiberg as a witness in their Supplemental Initial Disclosures. However, Counterclaimants initially stated that Freiberg was not a party, and they did not identify him as RCA's Vice President of Finance and CFO until October 2010. (*See* Feb. 10 Order at 3:3-9; *see also* Peden Reply Decl., Ex. 32 at 7, Ex. 33 at 8.) Judge Ryu found that Counterclaimants' failure to correctly identify Freiberg's role with RCA was not substantially justified, and she required Counterclaimants to reimburse the Vieste Defendants for the costs they incurred in serving a deposition subpoena on Freiberg. (Feb. 10 Order at 4:1-10.)

Apart from his role as CFO, Counterclaimants did not state in their initial disclosures that Freiberg would offer testimony on damages or accounting. They argue, however, that the Court should not exclude the declaration under Rule 37, because the Vieste Defendants deposed Freiberg about his role as CFO. According to the Counterclaimants, the Vieste Defendants have not been prejudiced, because it "is consistent with his capacity as CFO," to have Freiberg "authenticat[e] and describ[e] the contents of financial records respecting RCA's damages." (Tr. at 39:21-40:4.) However, the Vieste Defendants argued that Freiberg "was asked questions on the topics for which he was disclosed," and that had they "known that he was going to offer damages evidence or accounting record evidence, we would have had an opportunity to address

8

1  those topics during deposition." (Tr. at 41:18-25.) Counterclaimants never contradicted the
2  Vieste Defendants' assertion that Freiberg was not deposed about damages or accounting.
3         The Court concludes that Counterclaimants did not, through the discovery process, make
4  known to the Vieste Defendants the fact that Freiberg had information on RCA's damages and
5  accounting evidence. Therefore, the Court finds that Counterclaimants' failure to supplement
6  their initial disclosures with respect to Freiberg was not substantially justified. The Court
7  GRANTS the Vieste Defendants' request to exclude the Freiberg Declaration under Rule
8  37(c)(1).

### 3. Email Correspondence.

10        The Vieste Defendants also object to a series of emails offered by the Counterclaimants
11 on the basis that the emails contain inadmissible hearsay and are irrelevant. Counterclaimants
12 proffer the emails as evidence that the Vieste Defendants knew their representations were false
13 or that the Vieste Defendants had no reasonable ground to believe their representations were
14 true. (*See* Docket No. 133, Reply Br. at 8:22-9:11 & n. 25; Borovsky Opp. Decl., Ex. E
15 (Deposition of Michael Comparato ("Comparato Depo."), Exs. 19-21), Ex. F (Deposition of
16 Don Currise ("Currise Depo."), Exs. 9, 19-20, 25), Ex. G (Vieste 0002866-67).)[5]
17        To the extent the Counterclaimants have offered these emails as evidence of the Vieste
18 Defendants' state of mind, rather than for the truth of the statements contained therein, the
19 Court OVERRULES the Vieste Defendants' hearsay objections. The Vieste Defendants also
20 object to these emails on the basis that they are not relevant, because most of them were written
21 after the October meetings. However, Counterclaimants allege that the Vieste Defendants
22 continued to make purportedly false representations after the October meetings. Accordingly,
23 the Court also OVERRULES the Vieste Defendants' relevance objections.

---

[5]     The Court notes that Currise Deposition Exhibit 20 is incomplete. Counterclaimants have not included pages 2656-2657, although they have relied on page 2656 in their motion.

9

**C.      The Misrepresentation Claims Shall Proceed, In Part.**

As set forth above, Counterclaimants contend that, between August 27, 2008 and March 2009, the Vieste Defendants represented that Metropolis and Xalapa had agreed to and were prepared to enter into Joint Operating Agreements ("JOAs"), or their equivalents, with Vieste and its potential partners and that each of the municipalities would provide both land and funding for the projects. According to the Counterclaimants, these representations were false because: (1) the Vieste Defendant only had engaged in preliminary discussions with the municipalities and had no firm commitments; and (2) neither Xalapa nor Metropolis had, in fact, committed to provide land or funding for the projects. (FACC ¶ 28.) Counterclaimants posit that the Vieste Defendants made the representations in order to induce Counterclaimants to become partners with the Vieste Defendants on these two projects.

In order to prevail on their claims for intentional misrepresentation, each of the Counterclaimants must establish the following elements: (1) a misrepresentation; (2) knowledge that the representation was false; (3) the representation was made with the intent to induce reliance; (4) justifiable reliance on the representation; and (5) damages. *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 93 (2001) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)). In order to prove their claim for negligent misrepresentation, each of the Counterclaimants must establish the following elements: (1) misrepresentation of a past or existing material fact; (2) made without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the misrepresentation; (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and (5) resulting damage. *Lincoln Alameda Creek v. Cooper Indus., Inc.*, 829 F. Supp. 325, 330 (N.D. Cal. 1992) (citing *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986)).

The Vieste Defendants argue that Counterclaimants cannot establish any of these essential elements of their misrepresentation claims.

//
//
//

### 1. The Motion is Granted as to Claims Based on Conduct from August 27, 2008 up to October 15, 2008.

The crux of Counterclaimants' misrepresentation claims is that the Vieste Defendants falsely represented they had firm agreements with Metropolis and Xalapa to sign Joint Operating Agreements and that the cities would contribute land and financing for the two projects. At the hearing on this motion, the Court asked the Counterclaimants to provide record citations for the purported misrepresentations made on August 27, 2008 and the purported misrepresentations made between August 27, 2008 and October 15, 2008. The Court also directed the Counterclaimants to provide record citations for evidence that each of the Counterclaimants relied on such misrepresentations. (*See* Docket No. 338, Notice of Tentative Ruling and Questions, Question 4.)

With respect to misrepresentations made on August 27, 2008, Counterclaimants cited to one portion of Sargon's deposition, and they rely on additional portions of his deposition testimony in their opposition brief. (*See* Tr. at 10:10-17:1.) Sargon testified that during the August 27, 2008 meeting, Comparato mentioned that there "are some opportunities that *may* qualify as P3[6] and mentioned Metropolis, Mexican projects... and should we have the opportunity to continue the dialogue." (Borovsky Opp. Decl., Ex. A (Sargon Depo. I at 119:10-120:3).)[7] According to Sargon, he told Comparato about the formation of HRD, that it would be fine to provide "us" with information about opportunities, and "[t]hat was the end of the dialogue at that time. (*Id.*, Ex. A (Sargon Depo. I at 120:4-10).)

Sargon also testified that, at the August meeting, Comparato did not tell him anything about the two projects other than "this is a public-private partnership and that — the dialogue in opportunities like this is to compare notes, you know ... but details came out later. It was a

---

[6] Sargon's reference to "P3" is a reference to public-private partnerships. According to Sargon, "P3" "implies" that the municipalities would provide some financial incentives. (Borovsky Opp. Decl., Ex. A (Sargon I Depo. at 122:6-12).)

[7] None of the other Counterclaimants attended that dinner. (*See, e.g.,* Peden Supp. Decl, Ex. C (Goodman Depo., at 94:12-95:2 (acknowledging that first time Goodman met or had any communications with Vieste was October 2008)); Peden Reply Decl., Ex. 24 (Goodman Resp. to Vieste RFA 99-100).)

11

1  social get-together .... That's it. ... He didn't have plans, maps with him. So we discussed about
2  getting together and looking at the opportunity." (*Id.* (Sargon Depo. I at 120:12-121:24).)
3  Sargon also testified that Comparato did not discuss the land that would be used in the project
4  and that he inferred the financial incentives from the fact that Comparato referenced P3s. (*Id.*
5  (Sargon Depo. I at 122:2-12); *see also* Peden Reply Decl., Ex. 21 (Sargon Resp. to Vieste and
6  Vieste Developments Requests for Admission ("RFA") 98-100).)

7  Counterclaimants acknowledged that the record was "thin" as to statements made
8  between August 27, 2008 and October 15, 2008. Indeed, it is non-existent. (*See, e.g.,* Peden
9  Reply Decl., Ex. 26 (Sargon Depo. I, at 127:10-22), Ex. 27 (Goodman Depo. at 80:11-21).)
10 Counterclaimants' argument that they can present such evidence at trial is insufficient to
11 overcome the Vieste Defendants' motion. (*See* Tr. at 11:15-12:4.) In light of
12 Counterclaimants' theory of the case, the Court finds that no reasonable juror could find that
13 any of the Counterclaimants reasonably relied on any purported misrepresentation made
14 between August 27, 2008 and October 15, 2008.

15 Accordingly, the Court GRANTS, IN PART, the Vieste Defendants' motion on this
16 basis. Counterclaimants shall not be permitted to proceed on fraud claims premised on conduct
17 during this time period.

### 2. The Motion is Granted in Part and Denied in Part as to Claims from October 15, 2008 through March 2009.

20 The Court finds that Counterclaimants have met their burden of showing that there are
21 disputed issues of fact as to whether, at the October meetings and up until the MOUs were
22 executed, the Vieste Defendants made representations that they knew or reasonably should have
23 known were false. Specifically, the Counterclaimants present evidence that on or about October
24 14, 2008, the Vieste Defendants received an email suggesting that Xalapa did not have money
25 to contribute to the development project, but, at the October meetings, they represented to
26 Sargon and Goodman that the cities would be providing those resources. (*See* Borovsky Decl.,
27 Ex. A (Sargon Depo. Vol. I at 137:1-8, 164:7-11, 165:18-166:19), Ex. B (Goodman Depo. at
28 96:7-9, 96:16-97:22, 111:2-112:11), Ex. E (Deposition of Michael Comparato ("Comparato

12

Depo.") at 272:2-9, and Depo. Ex. 19).) Counterclaimants put forth similar evidence with respect to the Metropolis project. (Borovsky Decl., Ex. B (Goodman Depo., at 119:6-120:13).)

Counterclaimants also present evidence that, at the time of the October meetings and thereafter, the Vieste Defendants were aware that Xalapa and Metropolis had not "firmly" and "fully" committed to provide funding and land to the development projects in the manner in which the Vieste Defendants had represented. (*See, e.g.,* Borovsky Decl., Ex. C (Deposition of John Clarke ("Clarke Depo.") at 30:5-14, 46:23-47:2, 76:21-77:2), Ex. E (Comparato Depo. at 274:19-275:17, and Depo. Ex. 20), Ex. F (Deposition of Don Currise ("Currise Depo.") at 95:12-98:6, and Depo. Ex. 9).)

However, on November 17, 2008, Sargon and Goodman participated in meetings with Metropolis, and the Metropolis MOU was executed on November 26, 2008. Similarly, Sargon and Goodman participated in the meetings with Xalapa in early December 2008, and the MOU with Xalapa was executed on December 15, 2008.[8] According to discovery responses propounded by Sargon and Goodman, they learned at these meetings that no firm agreements were in place. (*See* Peden Supp. Decl., Ex. F (Sargon Resp. to Vieste Development Interrogatories 13-14), Ex. M (Goodman Resp. to Vieste Development Interrogatories 12-13).)

In addition, each of the MOUs spell out the manner in which the parties would proceed on the development projects. (*See* Metropolis MOU, ¶¶ 1, 3, 6 (Metropolis and VHR "will negotiate" a JOA with VHR and "will enter" into a JOA with VHR, and outlining what Metropolis would commit to in JOA); Xalapa MOU at 1-2 (Xalapa will provide public funding but there are conditions attached, and Xalapa and VHR agree to execute a definitive JOA once certain conditions are met).) Given Sargon's and Goodman's participation in these meetings, and their awareness of the terms of the MOUs, the Court concludes that no reasonable fact finder could conclude that the Counterclaimants' reliance on representations made after the MOUs were executed was reasonable.

---

[8] Counterclaimants do not claim to have been ignorant of the terms of the MOUs.

13

Accordingly, the Court GRANTS IN PART AND DENIES IN PART, the Vieste Defendants' motion on this basis.

### 3. HID and RCA Have Met Their Burden to Overcome the Vieste Defendants' Motion, but Hill Has Not.

Having determined that the intentional and negligent misrepresentation claims shall be limited to representations made between October 15, 2008 and November 26, 2008 for the Metropolis project and to representations made between October 15, 2008 and December 15, 2008 for the Xalapa project, the Court turns to which of the Counterclaimants may pursue those claims at trial. In their opposition brief, Counterclaimants argued that "it will be a question of fact for the jury to determine whether Counterclaimants reasonably relied on" the Vieste Defendants' representations. (Opp. Br. at 16:20-21.) Counterclaimants premised this argument on Vieste's theory of its case against them, namely that Sargon and Goodman made representations to the effect that they were acting not only for HRD but also for Hill, HID and RCA.

At the hearing, Hill, HID and RCA addressed an apparent "disconnect between on, on the one hand, ... taking the position that they weren't a party to ... the transaction... yet on the other hand making a claim for misrepresentation." (Tr. at 23:18-22.) Counterclaimants argued that they are "partners of HRD – or the founders of HRD – and that it was known to the [Vieste Defendants] what their role would be. RCA, on the one hand, seeking the financing; HID, on the other hand, handling the project management and construction management type services," and that it was known that these entities "would be contributing their revisions [*sic*] in terms of employee time and expense because of the representations [the Vieste Defendants] were making with respect to the [Xalapa] and Metropolis projects." (Tr. at 24:7-15.) Thus, according to Hill, HID and RCA, even if the Vieste Defendants did not make representations to Sargon or Goodman in their capacities as their agents or officers, in light of these entities' roles with HRD, the Vieste Defendants were aware that Hill, HID and RCA would rely on the representations and intended that those entities would rely on the representations. In support of

14

1  this argument, Counterclaimants rely on *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370 (1992) and
2  *Soderberg v. McKinney*, 44 Cal. App. 4th 1760 (1996). (*See* Tr. at 24:17-25:24.)

3  In *Bily*, the California Supreme Court addressed the question of "whether and to what
4  extent an accountant's duty of care in the preparation of an independent audit of a client's
5  financial statements extends to persons other than the client." *Bily*, 3 Cal. 4th at 376. The *Bily*
6  court held that "an auditor owes no general duty of care regarding the conduct of an audit to
7  persons other than the client." *Id.* at 376. The court also concluded, however, that an auditor
8  may be held liable to reasonably foreseeable third persons for intentional fraud in the
9  preparation and dissemination of an audit report, and an auditor also may be held liable "for
10 negligent misrepresentations in an audit report to those persons who act in reliance upon those
11 misrepresentations in a transaction which the auditor intended to influence." *Id.* at 376.[9]

12 Although *Bily* addresses this issue in the context of auditors, the principles articulated
13 therein provide for liability when, in a business or professional transaction, a defendant makes a
14 representation with the intent to induce plaintiff, or a "particular group or class" of persons to
15 whom plaintiff belongs to act in reliance on the representations, or where it is reasonably
16 foreseeable that the plaintiff or a "particular group or class" of persons to whom plaintiff
17 belongs would act in reliance on the representations. *See Soderberg*, 44 Cal. App. 4th at 1770
18 (holding that real estate appraiser who prepared report for mortgage broker could be held liable
19 by potential investors who acted in reliance upon report); *see also* California Civil Jury
20 Instructions (BAJI) 12.50.1.

21 Counterclaimants will bear the burden of proof on the element of reliance at trial. The
22 Vieste Defendants submit discovery responses from Hill, HID and RCA that show that Hill,
23 HID, and RCA have consistently taken the position that they did not attend the October
24 meetings, and that Sargon and Goodman were acting solely in their capacities as co-presidents
25 of HRD in their interactions with the Vieste Defendants. (*See* Peden Reply Decl., Ex. 1 (Hill
26 Resp. to Vieste Interrogatories 1-5), Ex. 4 (Hill Resp. to Vieste Development Interrogatories 17,

---

[9] In reaching its conclusion, the *Bily* court relied on principles set forth in the Restatement Second of Torts, section 552. *Id.* at 408-415.

15

20), Ex. 6 (Hill Resp. to RFA 79), Ex. 7 (HID Resp. to Vieste Interrogatory No. 12), Ex. 8 (HID Resp. to Vieste Development Interrogatory 23), Ex. 10 (HID Resp. to Vieste RFA 90), Ex. 11 (RCA Resp. to Vieste Development Interrogatories 15, 18), Ex. 12 (RCA Resp. to Vieste Interrogatory 11), Ex. 14 (RCA Resp. to RFA 85-100, 105-106), Ex. 19 (Sargon Resp. to Vieste Interrogatory 9), Ex. 20 (Sargon Resp. to Vieste Development Interrogatories 16-17), Ex. 22 (Goodman Resp. to Vieste Interrogatory 12), Ex. 23 (Goodman Resp. to Vieste Development Interrogatory 15), Ex. 24 (Goodman Resp. to RFA 65, 84); *see also* Borovsky Opp. Decl, Ex. A (Sargon Depo. at 169:15-21); Peden Supp. Decl., Ex. C (Goodman Depo. at 32:10-15, 33:12-15, 81:1-22, 94:12-19).)[10]

This evidence is sufficient for the Vieste Defendants to meet their burden, as the moving parties, to produce evidence that negates the element of reliance on Hill's, HID's, and RCA's counterclaims for fraud and negligent misrepresentations. Thus, Hill, HID and RCA must come forth with evidence from which a reasonable juror could find that, in the context of pursuing the Xalapa and Metropolis projects, that the Vieste Defendants knew with substantial certainty that Hill, HID and RCA would act in reliance on representations made to Sargon and Goodman or that it was reasonably foreseeable that they would do so.

RCA, Hill and HID put forth their own discovery responses, in which they have contended that, at the October meetings, the Vieste Defendants knew that Goodman and Sargon were "acting only as co-presidents of" HRD. (Geller Opp. Decl., Exs. C, E-F (Responses to Vieste Interrogatory 13).) These interrogatory responses undermine their reliance on *Bily* and *Soderberg,* because they suggest that the Vieste Defendants did not know that RCA, Hill or HID would be relying on any representations made at those meetings.

The Vieste Defendants were aware that HID and RCA were the two entities who formed HRD. Counterclaimants also have put forth some documents that do suggest Comparato and Currise believed HID and RCA were their "partners" in the Xalapa project. (*See* Borovsky

---

[10] Counterclaimants argue that their discovery responses "if read quite literally, as they should be — deal with the deal, the transaction... This is not a contract claim we're speaking of here." (*See* Tr. at 26:23-27:7.) However, the interrogatories required Counterclaimants to set forth "all facts that support or detract from your *counterclaims*," and were not limited in scope. The Court finds Counterclaimants' argument unpersuasive.

16

1 Opp. Decl., Ex. E (Comparato Depo. Exs. 21-22.) Similarly, at his deposition, Goodman identified purported misrepresentations that the Vieste Defendants made to RCA. (*See id.*, Ex. B (Goodman Depo at 96:23-97:22).) Goodman also testified that "Vieste" was interested in working with a developer with Hill's, or HID's, profile." (*Id.*, Ex. B (Goodman Depo. at 84:9-85:3).) There is no evidence in the record, however, from which a reasonable juror could conclude that any of the Vieste Defendants intended or could reasonably foresee that Hill would act upon the purported representations. Thus, the Court concludes that, notwithstanding their discovery responses, HID and RCA have met their burden to show that there are facts from which a reasonable juror could conclude that the Vieste Defendants intended HID and RCA to rely on any representations made to Sargon and Goodman.

The Vieste Defendants also argue that HID and RCA cannot establish they were damaged, because they have stated that no employee in their capacity as a HID or RCA employee worked on the project, and that HRD cannot establish damages because it has no employees. (*See, e.g.,* Peden Reply Decl., Ex. 7 (HID Resp. to Vieste Interrogatory No. 1); Peden Supp. Decl., Ex. L (RCA Resp. to Vieste Interrogatory 25), Ex. O (Deposition of Stephen Fishman at 111:2-4).) However, HID, RCA and HRD have put forth evidence that they did, in fact, incur damages as a result of their reliance on the purported misrepresentations. (*See* Borovsky Decl., Ex. B (Goodman Depo. at 105:13-107:15 (testifying that Sargon and Goodman time should be allocated to HRD and time spent by staff allocated to HID and RCA)); Geller Opp. Decl., Ex. A (RCA Resp. to Vieste Development Interrogatory 24), Ex. B (Hill Resp. to Vieste Development Interrogatory 22).) Accordingly, the Court finds that HID, RCA and HRD have met their burden to overcome the Vieste Defendants' motion for summary judgment on the negligent and intentional misrepresentations claims, but only for the time period between October 15, 2008 and the dates on which the parties executed the MOUs with Metropolis and Xalapa.

//
//
//

17

### 4. The Vieste Defendants are Entitled to Summary Judgment on the Constructive Fraud Claim.

HRD asserts a counterclaim for constructive fraud against each of the Vieste Defendants. "[O]nly a fiduciary can be liable for constructive fraud." *Everest Investors 8 v. Whitehall Real Estate Ltd. P'ship XI*, 100 Cal. App. 4th 1102, 1108 (2002) (citing *Assilzadeh v. Cal. Fed. Bank*, 82 Cal. App. 4th 399, 415 (2000)); *accord Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1142 (C.D. Cal. 2003) ("To state a cause of action for constructive fraud, a plaintiff must allege . . . a fiduciary or confidential relationship."). In ruling on the Vieste Defendants' motion to dismiss, this Court noted that HRD alleged that, "[i]n or around December of 2008, Hill Redwood and Vieste formed a joint entity" and that "*as a result of this relationship* . . . [Vieste] and Hill Redwood owed one another a fiduciary duty." (FACC ¶¶ 26-27 (emphasis added).) *See Vieste LLC v. Hill Redwood Development*, 2010 WL 4392939, at *6 (N.D. Cal. Oct. 29, 2010). "Because the FACC states that the relationship arose as a result of the December 2008 agreements, Hill Redwood's counterclaim for constructive fraud must be based on representations made during or after December 2008." *Id.*

HRV Development was formed on December 16, 2008, after both MOUs were signed. For the reasons set forth above, the Court concludes that reliance on any representations made after that date would have been unreasonable. HRD *argues* that "at the very least, triable issues of fact exist as to whether a fiduciary duty was owed by Vieste to Counterclaimants as early as October 2008, when the parties agreed to embark on a joint venture, and whether misrepresentations were made after a fiduciary duty arose." (Opp. Br. at 20:14-16.) Although that may well be true, HRD has not directed the Court to any evidence that would show, contrary to its allegations in the FACC, that the parties entered into a fiduciary relationship earlier than December 2008. It, therefore, has failed to meet its burden to overcome the Vieste Defendants' motion for summary judgment on this claim.

### CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the Vieste Defendants' motion for summary judgment. HID, RCA and HRD may pursue their

negligent misrepresentation and intentional misrepresentation claims, but those claims are limited to the time period between October 15, 2008 and the dates on which the MOUs were executed. The Vieste Defendants are entitled to judgment in their favor on all claims asserted by Hill and on the constructive fraud claim asserted by HRD.

**IT IS SO ORDERED.**

Dated: November 28, 2011

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE