**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIESTE, LLC, et al., | No. C 09-04024 JSW |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| HILL REDWOOD DEVELOPMENT, LTD., et al., | |
| Defendants. | |
| AND RELATED COUNTERCLAIM | |

## INTRODUCTION

This matter comes before the Court upon consideration of the Motion for Summary Judgment or, alternatively, for Partial Summary Judgment, filed by Defendants, Hill Redwood Development, Ltd. ("Hill Redwood"), Hill International, Inc. ("Hill"), Hill International Development, Inc. ("HID"), Redwood Capital Advisors ("RCA"), Stephen Goodman ("Goodman"), and S. Dick Sargon ("Sargon") (collectively "Defendants"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and it has had the benefit of oral argument. The Court HEREBY GRANTS IN PART AND DENIES IN PART Defendants' motion.

**BACKGROUND**[1]

This dispute arises out of an unsuccessful joint venture, which pertained to the pursuit of development deals in Metropolis, Illinois (the "Metropolis Project") and Xalapa, Veracruz, Mexico (the "Xalapa Project"). Needless to say, there is no love lost between the parties and all sides are dissatisfied with the failure of their business relationship. Hence this litigation. Plaintiffs, Vieste, LLC ("Vieste") and Vieste Development, LLC ("Vieste Development"), assert claims against each of the Defendants for fraud, negligent misrepresentation, constructive fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel.[2] The facts underlying Plaintiffs' claims are as follows and, unless otherwise noted, are undisputed.

In July 2008, Michael A. Comparato ("Comparato"), President and Chief Executive Officer ("CEO") of Vieste, was introduced to Kurt Chamberlin ("Chamberlin") of Hill. (Docket No. 98, Second Amended Complaint ("SAC") ¶ 14; Docket No. 111, Answer to SAC ("Answer") ¶ 14). On August 27, 2008, Comparato met with Chamberlin and Sargon in Chicago, Illinois (hereinafter the "August meeting"). (SAC ¶ 15; Answer ¶ 15.) At that time, Sargon was Vice-President of Hill and, the designated head of HID.[3] There is some dispute about what was said during the August meeting, but those disputes are not material to this motion. It is, however, undisputed that between August 27, 2008 and October 15, 2008, Sargon and Comparato continued to discuss possible joint development projects. (SAC ¶ 18; Answer ¶ 18.)

On October 15 and October 16, 2008, Comparato and Don Currise, Sr. ("Currise"), Vice President of Vieste, met with Sargon and Goodman, who was President and CEO of RCA, at

---

[1] The procedural history of this case, which involved prolonged motion practice relating to the pleadings shall not be repeated in this order.

[2] Unless it is appropriate to refer to Plaintiffs or Defendants collectively, the Court shall refer to each individual or entity by the abbreviations above. The Court notes that the Defendants have chosen to attack Plaintiffs' claims on a collective basis, rather than contending that Plaintiffs cannot prevail against any particular entity or individual.

[3] By September 2008, Sargon identified himself as HID's President. (*See, e.g.,* Docket No. 291, Declaration of Patricia L. Peden ("Peden Opp. Decl."), Ex. 4 (HRD 164).)

2

1  RCA's office in Pleasanton, California (hereinafter the "October meetings"). (SAC ¶ 20;

2  Answer ¶ 20.) By this time, Goodman and Sargon also were Co-Managing Directors of HRD,

3  which was formed in September 2008. (SAC ¶ 19; Answer ¶ 19.)

4  There are disputes about the substance and outcome of these meetings. Plaintiffs

5  contend that at the conclusion of the October meetings, all parties entered into an oral contract,

6  the terms of which were:

> that the Metropolis and Xalapa projects would be pursued as joint ventures; that a special project entity would be created for each project; that Hill Redwood would own two-thirds of each project entity and Vieste would own one-third; that the companies would also form a development company owned in a similar fashion that would earn development fees; that Vieste and Hill International would share project management responsibilities equally under contract to the development company; that all companies would receive full fees; that the special project entities would receive a carried interest ownership in each project; that [RCA] would fund all "seed equity" to cover fees and expenses from October 15, 2008 to project closings; and that seed funding would occur upon execution of memoranda of understanding with each municipality.

14  (SAC ¶ 22; Docket No. 290, Declaration of Michael Comparato ("Comparato Decl."), ¶ 2;

15  Peden Opp. Decl., Ex. 7 (Deposition of Michael Comparato ("Comparato Depo.") at 149:9-

16  162:12).) Defendants deny that the parties formed an oral contract at the October meetings.

17  (*See* Answer ¶ 22.)

18  Plaintiffs also contend that, in addition to reaching an oral contract at the October

19  meetings, Goodman told Comparato and Currise that RCA had "its own fund specifically for

20  the types of joint ventures being discussed," "that there would be no need to secure funding

21  from an outside source" and that "[u]pon execution of the memoranda of understanding with

22  each municipality, funding would be provided directly by" RCA. (SAC ¶ 24; Peden Opp.

23  Decl., Ex. 7 (Comparato Depo. at 152:12-22, 153:17-155:6, 155:23-156:2, 157:8-23, 158:18-

24  25).)

25  On October 17, 2008, Currise sent an email to Sargon, Goodman and Comparato, in

26  which he stated that "[w]e are very excited about the opportunities and partnership as

27  discussed." (Peden Opp. Decl., Ex. 4 (HRD 0403-0406).) Comparato also attached "a list of

28  work effort requirements with dates and responsibilities," and he noted that "[w]e tried to

3

1  memorialize the path we discussed in Oakland.  If we can meet this schedule, we can have the
2  new Development Company in place, the Metropolis SPV and Joint Operating Agreement
3  executed, Metropolis seed money funded, Xalapa MOU executed with the City, Xalapa SPV
4  executed, seed money funded, Project Fund created and initially funded with private and public
5  funds, and development agreements executed by both SPV by year end." (*Id.*, Ex. 4 (HRD
6  0403).)

7  On November 3, 2008, John Bradley, Vieste's Chief Financial Officer, sent an email to
8  Terresa Cordova of RCA, and he attached "a draft of VHR Developers LLC Letter of Intent,
9  which hopefully tracks the discussions recently held in Oakland."  (Declaration of Jason Geller
10 in Support of Defendants' Motion for Summary Judgment ("Geller Supp. Decl."), Ex. 3
11 (Deposition of John Bradley ("Bradley Depo."), at 184:7-186:13 and Depo. Ex. 5).)  Cordova
12 and Bradley exchanged additional drafts of this document, copies of which were sent to Currise,
13 Goodman and Sargon.  (*Id.*, Ex. 3 (Bradley Depo. at 189:2-190:10, 192:2-195:1 and Depo. Exs.
14 6, 8).)

15 On November 17, 2008, Vieste and HRD executed an Agreement of Intent.  (*Id.*, Ex. 3
16 (Bradley Depo. 197:1-22 and Depo. Ex. 7 ("Agreement of Intent").)  In the recitals section,
17 Vieste and HRD state their intent "to create a development business known as VHR
18 Developers, LLC[4] ... with a geographic scope of operations in the United States and Mexico,
19 and other select locations as may be mutually agreed upon in a non-exclusive manner."
20 (Agreement of Intent at 1.)  The Agreement of Intent also provides, in part, that "[t]he parties
21 intend that this Agreement summarizes the principal terms of a proposal they are considering
22 regarding the formation of a joint venture to jointly pursue certain real property development
23 opportunities.  Except as set forth in Sections 8, 9 and 10 (the 'Binding Provisions'), nothing set
24 forth herein shall create a binding obligation on any of the parties hereto."  (Agreement of
25 Intent, § 1.)[5]

---

[4] This development business eventually was named HRV Development, LLC.

[5] The final version of the Agreement of Intent does not contain a Section 10.

4

In the "non-binding" sections of the Agreement of Intent, Vieste and HRD outline their respective responsibilities, which include "shared project management services," and an "equal share in any developer's fee and carry generated by" the development." (*Id.* §§ 3.1-3.2, 4.1-4.2). The Agreement of Intent also states that Vieste and HRD each "would be responsible for all its costs until a Special Project Vehicle (SPV) is created, seed funding provided, and VHR Developers contracted, after which these costs would be reimbursed through the developer's fee. If the SPV is not created and funded, the Parties would absorb their own costs." (Agreement of Intent §§ 3.1-3.3, 4.1-4.3.) The Agreement of Intent also provides that "HRD would have the primary responsibility for obtaining the required capital to fund the projects, including preparing whatever financial information is required, for which it would be reimbursed from the developer's fee at its normal billing rate." (*Id.* § 4.4.) It further provides that the development company "would be 1/3 owned by Vieste and 2/3 owned by HRD." (*Id.* § 5.1.)

Finally, the Agreement of Intent contains an integration clause, which states that "[t]his Agreement contains the final expression of the understandings and commitments of the Parties with respect to the subject matter hereof, and all prior discussions, negotiations, and writings regarding such subject shall be deemed terminated and merged herein. No revocation, amendment, modification, supplement or waiver of any provisions of the Agreement shall be effective unless in writing and signed by the Parties." (*Id.* § 9.1.) The Agreement of Intent does not contain explicit references to a requirement that RCA would fund all seed equity to cover fees and expenses from October 15, 2008 to project closings, that seed funding would occur upon execution of memoranda of understanding with each municipality, or that RCA had a proprietary fund from which the seed funding could be obtained.

On November 17, 2008, Comparato, Currise, Goodman and Sargon met with Metropolis city officials, and on Novermber 26, 2008, Metropolis signed a Memorandum of Understanding ("Metropolis MOU"), with VHR Fund - Metropolis. (SAC ¶ 26; Answer ¶ 26*.*) On December 2, 2008, Comparato, Currise, Edgar Gonzales (a Vieste affiliate), Sargon and Goodman met with Xalapa city officials, and on December 15, 2008, Comparato, on behalf of VHR

5

Developers LLC, and Xalapa, executed a MOU ("Xalapa MOU"). (SAC ¶ 30; Answer ¶ 30.) Vieste Development was formed on or about December 16, 2008. On that same date, Vieste Development and Hill Redwood executed an Operating Agreement for HRV Development, LLC, the entity that was anticipated to move forward on the Metropolis and Xalapa projects. (Docket No. 239, Declaration of S. Dick Sargon in Support of Motion for Summary Judgment ("Sargon Supp. Decl."), ¶ 6, Ex. 4.)

The Court shall address additional facts, as necessary, in its analysis.

## ANALYSIS

### A. Legal Standards Applicable to Motions for Summary Judgment.

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to, *inter alia*, depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party may also show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the

6

pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     The Contract Claims.**

   **1.     Defendants Are Entitled to Judgment on the Breach of Contract Claim.**

Plaintiffs take the position that the parties entered into a binding oral contract at the October meetings, in which the parties agreed, *inter alia*, that Defendants would provide seed funding in the amount of $5.5 million for the Xalapa and Metropolis projects, that the seed funding would be provided by RCA, obviating the need to obtain outside funding, and that the seed funding would be used to pay any costs incurred after October 15, 2008.[6]

To prevail on this claim, Plaintiffs must demonstrate, *inter alia*, the existence of a valid oral contract. *See, e.g., Reichert v. General Insurance Co.*, 68 Cal. 2d 822, 830 (1969) (breach of contract claim "is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff"). Under California law, in order to establish the existence of a valid contract, a plaintiff must establish mutual consent. *See First Nat'l Mortg. Co. v. Federal Realty Investment Trust*, 631 F.3d 1058, 1065 (9th Cir. 2011) (citing *Kruse v. Bank of Am.*, 202 Cal. App. 3d 38, 59 (1988)) ("Creation of a valid contract requires mutual assent."); Cal. Civ. Code § 1550.

"A manifestation of assent sufficient to conclude a contract is not prevented from doing so because the parties manifest an intention to memorialize their already made agreement in writing." *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 313 (9th Cir. 1996). However, "if a

---

[6]     Plaintiffs expressly limit their claim for breach of contract to the alleged breach of an oral agreement, rather than breach of a written contract or an implied contract.

7

1  party knows that the other intends no obligation to exist until the written agreement is made, the
2  earlier manifestation does not constitute a contract. ... Whether the parties intended their oral
3  agreement to be immediately effective or only to become binding on the execution of the
4  writing depends on the circumstances." *Id.* at 314.

In *Rennick*, the plaintiffs sought to become an exclusive franchisee of defendant's services. The plaintiffs alleged that, following a meeting of the principals, the parties reached an oral agreement and manifested their agreement by way of a handshake. *Id.* at 311-12. The defendant contended that no deal was reached, and it relied on the fact that the agenda for the meeting and a letter of intent signed after the meeting clearly stated that board approval was required for any agreement. *Id.* at 312. The letter of intent also stated that the parties were still negotiating toward a final agreement and that the letter of intent had no binding effect. *Id.*

The Ninth Circuit rejected the plaintiffs' argument that the letter of intent could be construed as "a mere memorialization of a contract already made" at the parties first meeting. Rather, the court found that the agenda and the letter of intent demonstrated that there was no mutual assent to a binding contract. *Id.* at 313-14. The court also concluded that "neither the ... oral understandings, nor the memorialization of those understandings in the letter of intent amounted to a contract. The reason is that the parties intended not to be bound." *Id.* at 314. Thus, the court upheld the district court's decision to grant summary judgment on plaintiffs' breach of contract claim "on the ground that no contract was made." *Id.* at 313.

Defendants argue that the Agreement of Intent demonstrates that the parties did not, in fact, have a final binding agreement as of October 2008, and they rely heavily on *Rennick* in support of this argument. Plaintiffs argue that the Agreement of Intent has no bearing on its breach of contract claim, because it pertained only to the larger joint venture whereas the alleged oral contract pertained only to the Xalapa and Metropolis projects. The Court does not find Plaintiffs' argument persuasive.

There is some testimony that could provide support for Plaintiffs' position, (*See* Peden Opp. Decl., Ex. 5 (Deposition of Don Currise ("Currise Depo.") at 108:10-109:8), Ex. 7 (Comparato Depo. at 143:12-20); *see also* Geller Supp. Decl., Ex. 3 (Bradley Depo. at 178:4-14

8

(testifying that Agreement of Intent was a "global road map on how the joint venture would operate").) However, a comparison of the terms of the alleged oral agreement, as set forth in the SAC, with the terms of the Agreement of Intent, shows that they encompass the same subject matter. (*Compare* SAC ¶ 22 *with* Agreement of Intent; *see also* Peden Supp. Decl., Ex. 4 (HRD 403-406).) Moreover, Bradley acknowledged that the Agreement of Intent covered Metropolis and Xalapa, it just was not "meant to be exclusive to those projects." (Bradley Depo. at 178:8-11.) As such, Plaintiffs' argument that the Agreement of Intent and the oral agreement "concern different subject matter" is unsupported by the record.

The Court finds the facts of this case to be similar to the facts in *Rennick*, and it concludes that Plaintiffs have not established that the parties reached an oral agreement at the October meetings. First, unlike in *Rennick*, where the court credited the plaintiffs' testimony that the parties manifested their assent to an agreement by way of a handshake, Plaintiffs do not offer any evidence that the parties manifested assent to the terms of the alleged oral contract. In addition, as in the *Rennick* case, the terms of the Agreement of Intent state that the parties had not reached any final, binding agreement. Accordingly, the Court concludes that Plaintiffs have not put forth sufficient evidence to show that there are genuine issues of material fact in dispute regarding the existence of a binding oral contract.[7]

Plaintiffs also have asserted this claim as a Counterclaim-in-Reply ("CIR"). At the hearing on these motions, the Court inquired whether the parties agreed that a ruling on Plaintiffs' affirmative claims would apply equally to the CIR. Plaintiffs argued that there were additional facts alleged in the CIR that were obtained in discovery. However, Plaintiffs do not argue that there are *new* facts that have been discovered that could not have been presented in opposition to the motion, and it is evident that the CIR rests on the same allegations as Plaintiffs' SAC.

---

[7] Defendants also argued that the terms of the alleged oral agreement were too indefinite to be enforced and that the statute of frauds barred the breach of contract claim. Defendants also argued that because Vieste Development LLC did not exist in October 2008, it could not establish a claim for breach of the alleged oral contract. In light of the Court's ruling, it does not reach these alternative arguments.

9

Accordingly, the Court GRANTS, IN PART, Defendants' motion for summary judgment on this basis.

//

//

//

### 2. Defendants Are Entitled to Judgment on the Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

"There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract." *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960)). The covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 349 (2000) (emphasis omitted). However, in order "[t]o establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." *Fortaleza v. PNC Financial Services Group, Inc.*, 642 F. Supp. 2d 1012, 1021-22 (N.D. Cal. 2009) (citing, *inter alia*, *Racine & Laramie v. Dep't of Parks & Rec.,* 11 Cal. App. 4th 1026, 1031 (1992)); *see also Smith v. City and County of San Francisco,* 225 Cal. App. 3d 38, 49 (1990) ("Without a contractual relationship, [a plaintiff] cannot state a cause of action for breach of the implied covenant."). Because Plaintiffs have failed to establish the existence of a valid contract, Defendants are entitled to summary judgment on this claim as well. For the reasons set forth above, the Court also concludes that Defendants are entitled to summary judgment on the CIR for breach of the implied covenant of good faith and fair dealing.

Accordingly, the Court GRANTS, IN PART, Defendants' motion for summary judgment on this basis.

**C. The Fraud Claims.**

Defendants move for summary judgment on Plaintiffs' claims for fraud, negligent misrepresentation, promissory estoppel and constructive fraud on the basis that Plaintiffs cannot

10

establish the element of reasonable reliance, but they do not challenge Plaintiffs' ability to establish any of the other elements of these claims.[8] As Plaintiffs acknowledge in their opposition, "[t]he real dispute" on these claims "is ... whether Defendants said they had their *own funds* from which to seed the projects." (Docket No. 289, Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Opp. Br."), at 5:1-2 (emphasis in original).)

Defendants argue that Plaintiffs cannot establish reliance, because the terms of the Agreement of Intent conflict with the purported misrepresentations and because the parties agreed that the substantive provisions of the Agreement of Intent were non-binding. Defendants concede, however, the terms of the Agreement of Intent, as a matter of law, do not preclude Plaintiffs from establishing reliance. *See McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 794-95 (2008) (finding that disclaimer of reliance in lease could not prevent plaintiff from establishing justified reliance on representations contrary to that term); *Hinesley v. Oakshade Town Center*, 135 Cal. App. 4th 289, 300-02 (2005) (holding that term in lease that disclaimed reliance on representations to contrary is factor to be considered in determining whether reliance on representations was justified and reasonable).[9]

Defendants also rely on *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384 (2006). In that case, the plaintiff asserted a claim for promissory fraud, based on allegations that defendant promised him that his "employment would continue indefinitely so long as he preformed in a proper and competent manner..." *Id.* at 393. The *Dore* court affirmed the trial court's decision to grant summary judgment in favor of the defendant, because plaintiff signed an employment agreement that expressly stated that he was hired on an "at-will" basis. Because the court found the employment agreement unambiguous, it concluded that the terms of that agreement defeated

---

[8] The Court has included the claim for promissory estoppel with Plaintiffs' fraud based claims, because of the element of reliance. The alleged promises underlying this claim are the terms of the alleged oral contract. (*See* SAC ¶ 103.)

[9] The *McClain* and *Hinesley* cases involve fraud claims that are premised upon allegations of fraudulent inducement to a contract. Plaintiffs in this case, however, do not allege that they were fraudulently induced to enter into the alleged oral contract or the Agreement of Intent based on the alleged misrepresentations.

11

"any contention that he reasonably understood [defendant] to have promised him long term employment." *Id.* at 394. The Court finds *Dore* distinguishable on its facts.

In this case, the Agreement of Intent provides that HRD would be responsible for obtaining funding HRD would have the primary responsibility for obtaining the required capital to fund the projects. (Agreement of Intent § 4.4.) Plaintiffs take the position in this litigation that Defendants represented that they had their own funds for this purpose. The Court cannot say as a matter of law that the Agreement of Intent is unambiguous. Moreover, unlike this case, the plaintiff in *Dore* admitted in his deposition that no one made any specific representations to him regarding his continued employment. *Dore*, 39 Cal. 4th at 393.

Defendants do present evidence that Plaintiffs were experienced in their field and that they participated in drafting the Agreement of Intent. Plaintiffs do not refute those facts. However, Plaintiffs also present evidence that the Agreement of Intent was drawn from a template provided by Defendants. (Peden Opp. Decl., Ex. 6 (Vieste 000092-98).) Defendants also note that the Seed Equity Books for the Xalapa and Metropolis projects state that "HRV Development is offering the opportunity for seed investor(s) to participate" in the two projects, and they contend these statements undermine any reasonable inference that Defendants were going to "provide" funds from their own accounts. (*See* Goodman Decl., Ex. 4 (Metropolis Seed Equity Book at HRD 3101), Ex. 5 (Xalapa Seed Equity Book at HRD at 3006).) However, Plaintiffs put forth evidence that, with respect to projects that HRD undertakes, RCA is responsible for project financing. Plaintiffs also put forth evidence regarding the manner in which RCA obtains project financing that would not necessarily conflict with the statements in the Seed Books. (*See* Peden Opp. Decl., Ex. 1 (Rule 30(b)(6) Deposition of RCA ("RCA Depo.") at 28:6-9, 33:9-34:5; 88:16-89:3), Ex. 2 (Goodman Depo. at 160:23-161:19, 164:17-169:24, 179:7-25, 225:19-230:21, 233:1-12, 265:7-20, 293:18-295:8, & Depo. Exs. 4, 6 ("we treat our Fund as a separate entity and will need to entice them with a reasonable return")) 7, 11, & 19); Ex. 7 (Comparato Depo. at 152:12-22, 153:17-155:6, 155:23-156:2, 157:8-23, 158:18-25), Ex. 18 (Rule 30(b)(6) Deposition of Vieste LLC ("Vieste Depo.") at 66:2-67:67:8 (discussing Seed Equity Books)).)

1     Defendants also argue that Plaintiffs cannot establish their fraud claim, because failing
2  to perform obligations under a contract is not sufficient to establish fraud. Defendants rely on
3  *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18 (1985) in support of this argument. In *Tenzer*, the
4  dispute arose over an alleged oral promise relating to a finders' fee in connection with a real
5  estate transaction; a promise the plaintiff alleged the defendant had no intention of keeping.
6  The plaintiffs alleged three alternative theories of liability: breach of contact, estoppel, and
7  fraud. *Id.* at 22-25. With respect to the plaintiff's fraud claim, the court stated that California
8  law requires "'something more than nonperformance ... to prove the defendant's intent not to
9  perform his promise." *Id.* at 30; *see also Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*,
10 2007 WL 2206946 (S.D. Cal. July 27, 2007) ("For promissory fraud claims, plaintiffs cannot
11 rest on allegations that defendants breached the contract but must plead the existence of other
12 facts that create a reasonable inference of deceptive intent at the time the statements were
13 originally made.") In *Tenzer*, the record established that the plaintiff had demonstrated triable
14 issues of fact, and the court concluded that summary judgment on the fraud claim was
15 inappropriate. *Id.*

16    Contrary to Defendants' argument, Plaintiffs do not rely solely on the fact that the
17 Defendants failed to provide seed funding to support these claims. (*See* Peden Supp. Decl., Ex.
18 1 (RCA Depo. at 29:9-18, 182:4-187:7), Ex. 2 (Goodman Depo. at 285:8-21), Ex. 4 (HRD
19 2014-15 ("Goodman - we have been sued many times now over the language of you being a
20 lender vs. reasonable commercial efforts to secure financing from a lender. ... If you cant get the
21 work being a facilitator DON'T TAKE IT. We will get sued again when time to pony up.")
22 (emphasis in original), Ex. 4(HRD 4792-4809), Ex. 4a (HRD 4947), Ex. 10 (Rule 30(b)(6)
23 Deposition of RCA, Vol. II at 65:7-17, 103:17-22).)[10]

24    Accordingly, the Court finds that Plaintiffs have put forth sufficient evidence to show
25 that there are genuine issues of material fact in dispute regarding the element of reliance, and
26 the Court DENIES, IN PART, Defendants' motion for summary judgment on this basis.

---

[10]     Some of this evidence pertains to allegations of fraud against Defendants that are unrelated to this litigation. Defendants have not objected to this evidence and, as such, the Court has considered it.

13

**C.     Lost Profits**

Finally, Defendants move for summary adjudication on the issue of whether Plaintiffs are entitled to lost profits. Defendants argue they are not, because the Metropolis and Xalapa projects were unestablished business ventures and lost profits are too speculative to be awarded in this case. Plaintiffs argue that the "unestablished business" standard should not apply, but apart from referencing their general experience, do not suggest that the Xalapa and Metropolis projects were established business. Regardless, all parties agree that in order to obtain lost profits, the crux of the dispute is whether Plaintiffs can establish the extent and the occurrence of the lost profits to a reasonable certainty. *See Grupe v. Glick*, 26 Cal.2d 680, 693 (1945); *Parlour Enterprises, Inc. v. Kirin Group, Inc.*, 152 Cal. App. 4th 281, 287-88 (2007); *Electronic Funds Solutions, LLC v. Murphy*, 134 Cal. App. 4th 1161, 1180 (2005); *Resort Video, Ltd. v. Laser Video,* Inc., 35 Cal. App. 4th 1679, 1697-98 (1995).

In order to determine whether a plaintiff has established that lost profits are reasonably certain, courts may consider, among other factors, expert testimony, the experience of similar businesses, whether the market is established, market studies, the plaintiff's experience in the field, and prelitigation projections. *Parlour Enterprise*, 152 Cal. App. 4th at 288 (citing *Kids' Universe v. In2Labs*, 95 Cal. App. 4th 870, 884-85 (2002) and *S. John Kreedman & Co. v. Meyers Bros.*, 58 Cal. App. 3d 173, 184-85 (1976)).

Defendants contend that the only evidence Plaintiffs have offered on lost profits is an Expert Report prepared by Dr. Nisha Mody. (*See* Geller Supp. Decl., Ex. 4 ("Mody Report").) Defendants contend that the figures contained in Dr. Mody's report are speculative and conjectural and, thus, are insufficient to prove lost profits to a reasonable certainty. Defendants also argue, on reply, that Plaintiffs do not present evidence about the manner in which the parties' developed the projections contained in the Seed Equity Books and, thus, those projections are unreliable. (*See also* Docket No. 301, Reply Br. at 14:4-6 (("[l]ogically, profit projections that were created to induce third parties to invest (and 'share in the profits') are inherently optimistic and hence unreliable").)

Defendants rely heavily on *Parlour Enterprises* to support their argument that the Seed Equity Books are too unreliable to establish lost profits. In *Parlour Enterprises*, as here, the plaintiff's expert relied on certain proforma projections to support his opinion regarding lost profits. The court noted that the expert did not have any information about the qualifications and experience of the persons who prepared the objections, and it noted that the plaintiffs had not put forth any evidence about the "facts underlying the projections or the calculations used to prepare them." *Parlour Enterprises*, 152 Cal. App. 4th at 289-90. Unlike this case, however, the court was not resolving the issue on a motion for summary judgment. Thus, although the court concluded that the plaintiff had failed to establish lost profits with reasonable certainty, it did so on a fully developed record.

It is undisputed that Dr. Mody relied on the Seed Equity Books prepared for the Xalapa and Metropolis projects, and she admits in her deposition that she herself did not investigate the market for real estate in Xalapa or Metropolis or the economic conditions in those regions. However, she also explained that it was her understanding that the parties had collaborated on the Equity Books, and the figures contained, and that she also relied on their experience and any investigation they conducted to arrive at those figures. (*See* Geller Supp. Decl., Ex. 4 (Deposition of Nisha Mody, Ph.D. ("Mody Depo.") at 118:15-119:6, 172:7-175:22, 181:3-18, 192:6-194:23, 199:22-200:25, 202:15-203:6, 215:8-217:13, 239:8-241:18, 243:5-16, 244:10-245:12, 246:18-247:14, 248:4-249:7); Peden Opp. Decl., Ex. 7 (Mody Depo. at 98:8-19 ("all of the records suggest that both plaintiffs and defendants agreed that the [Seed Equity Books] would ... provide the proper source for remuneration"); *see also* Peden Decl. Ex. 4 (HRD 3004, 3096-3099).) Plaintiffs also put forth correspondence from Goodman that sheds some light on the manner in which the Seed Equity Books were prepared. Moreover, Defendants do not dispute Plaintiffs' experience in these types of projects, which is a factor to consider in the lost profits analysis. Finally, Plaintiffs present evidence that Defendants continued to pursue the projects after the parties' relationship had ended, which Plaintiffs argue supports a reasonable inference that they believed the projects would prove profitable. (*See* Peden Opp. Decl., Ex. 4 (HRD 1593, 1594, 1685-86, 1690-1702, 2459-60, 2864-67, 2890-92, 2897-98, 5554-55).)

Although Plaintiffs may face an uphill battle on this issue at a trial, the Court cannot say, as a matter of law, that Plaintiffs will be unable to prove lost profits with reasonable certainty. Accordingly, the Court DENIES, IN PART, Defendants' motion for summary judgment on this basis as well.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: November 28, 2011



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California